Submitted on briefs July 17, affirmed July 31, 1917.

## LEEFIELD *v.* LEEFIELD.*

(166 Pac. 953.)

**Marriage—Persons Who may Marry—Consanguinity.**

1. Marriage between first cousins consummated outside the state of residence for the purpose of evading its laws will not be annulled in this state, regardless of whether it was unlawful in state where consummated, notwithstanding Section 7017, L. O. L., prohibiting such marriage, Section 2098, declaring it punishable by imprisonment or fine, and Section 502, declaring it void if solemnized within the state, since latter section is impliedly to the effect that, if a marriage between prohibited persons is solemnized in another state, the marriage is valid in this state irrespective of whether or not it is of any binding force in state where nuptial is celebrated.

> [As to validity of marriage solemnized outside of state, see note in 18 Am. Rep. 521.]

**Divorce—Grounds—Statute.**

2. Divorce can be granted only for reasons specified in Section 507, L. O. L.

From Josephine: FRANK M. CALKINS, Judge.

In Banc.   Statement by MR. JUSTICE MOORE.

This is a suit by Otis D. Leefeld against Elizabeth M. Leefeld to have a marriage declared void. The defendant, though personally served with summons and a certified copy of the complaint, failed to demur, plead

----

*On the question of incestuous marriage as void or voidable, see note in L. R. A. 1916C, 723.                    REPORTER.

or answer. Whereupon the district attorney of the proper county appeared on behalf of the state. From the evidence received at the trial findings of fact were made as follows:

"The court finds that the plaintiff and defendant are now and have been inhabitants of the State of Oregon for the period of one year immediately preceding the commencement of this suit; that plaintiff and defendant entered into a marriage at Vancouver, Washington, on or about October 1, 1902; that no children have been born the issue thereof; that plaintiff and defendant are full first cousins; that at the time of said marriage plaintiff and defendant were citizens and residents of Oregon, and that they went from Oregon to the State of Washington and contracted said marriage in said last named state for the purpose of evading the laws of Oregon, and that they each believed that they had thereby contracted a valid marriage, and they thereafter returned to and have since resided in Oregon."

As a conclusion of law the court further found:

"That said marriage was and is valid."

A decree having been rendered dismissing the suit the plaintiff appeals.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief over the name of *Mr. Oliver S. Brown.*

For the State there was a brief over the name of *Mr. W. T. Miller,* District Attorney.

MR. JUSTICE MOORE delivered the opinion of the court.

1. No testimony given at the trial has been sent up, and hence the only question to be considered is whether

the findings of fact as made support the conclusion of law and the decree based thereon. Provisions of law applicable to the case at bar are:

"Marriage is a civil contract": Section 7016, L. O. L.

"The following marriages are prohibited: * * 2. When the parties thereto are first cousins or any nearer of kin to each other, whether of the whole or half blood, computing by the rules of the civil law": Section 7017, L. O. L.

"If any persons, being within the degree of consanguinity within which marriages are prohibited by law, shall intermarry with each other * * such persons or either of them, upon conviction thereof, shall be punished by imprisonment in the penitentiary * * or . * * in the county jail * * or by fine"; Section 2098, L. O. L.

"All marriages which are prohibited by law, on account of consanguinity between the parties * * shall, if solemnized within this state, be absolutely void": Section 502, L. O. L.

In *McIlvain* v. *Scheibley*, 109 Ky. 455, 59 S. W. 498, which was a suit by an alleged widow to recover dower, the answer substantially averred that the plaintiff was the niece of her deceased alleged husband, both of whom had resided in Kentucky, but in order to evade the laws thereof prohibiting marriages between persons of that degree of consanguinity they went to Tennessee for the sole purpose of entering into a marriage contract, setting forth provisions of the Code of the latter state inhibiting marriages between such persons; and that after the ceremony was performed the parties returned to Kentucky, where they were legally domiciled when he died. The plaintiff, renouncing the provisions of his last will and testament in her behalf, undertook to recover the allowance which the law of Kentucky made in such cases out of the lands and tene-

ments of the decedent for her support and maintenance. It was ruled that under Section 5646 of the Code of Tennessee, interdicting a man from marrying his niece and declaring that any person who should violate such provision would be guilty of incest and punished therefor by imprisonment in the penitentiary, rendered a marriage between such persons void *ab initio,* and that the woman was not entitled to dower out of the decedent's estate. In deciding that case it is said:

"It is true that the Tennessee statute does not expressly say that a marriage between uncle and niece is void, but it does expressly prohibit such marriages, and provides that persons violating the law shall be guilty of felony, and confined in the penitentiary for a number of years. Hence it seems to us that, taking the statutes relating to such marriages, the necessary meaning and intent were to render such marriages absolutely void. It would be strange, indeed, if a marriage could have any validity, and yet the parties by continuing the marriage relation would be guilty of a felony, and constantly liable to be convicted and sentenced to the penitentiary."

It would appear that the provision of the Code of Tennessee thus referred to was similar to Sections 7017 and 2098, L. O. L., which latter enactments might possibly be controlling in this state in a case of this kind if it were not for Section 502 of our Code, which is impliedly to the effect that if a marriage between prohibited persons is solemnized in another state, the union thus formed is valid in Oregon irrespective of whether or not it is of any legal or binding force in the state or county where the nuptial is celebrated. Section 502 seems to have been enacted on the assumption of a legislative recognition that men and women of the classes specified who were prohibited from marrying each other in Oregon might possibly be permitted

legally to enter into that relation in some other state or country, and that if the union thus formed were valid where it was consummated, it would be regarded as legal in this state, thereby imposing upon the state or country where the wedding occurred the duty of convicting and punishing such persons if they violated the *lex loci contractus.* That such a construction of the statute might, as in this instance, induce prohibited persons temporarily to leave Oregon in order to evade the laws thereof and go to some other state to consummate a marriage which if celebrated in this state would be void is a legislative question with which the courts have no right to meddle.

In *Sturgis* v. *Sturgis,* 51 Or. 10, 15 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034), it is said:

"The rule as gathered from the authorities seems to be that in general a marriage valid where solemnized is valid everywhere, not only in other states generally, but in the state of the domicile of the parties, even when they have left their own state to marry elsewhere for the purpose of avoiding the laws of the state of their domicile. There are two exceptions to this rule, viz., marriages which are deemed contrary to the law of nature as generally recognized in Christian countries, such as involve polygamy and incest, and marriages which the local lawmaking power has declared shall not be allowed any validity, either in express terms or by necessary implication, viz., such as are prohibited by Section 5217, B. & C. Comp. (L. O. L., Section 7017)."

The language thus employed was evidently used by way of illustration and comparison only for the question there considered was the marriage of a ward without the consent of the guardian. It is further said in the opinion:

"The marriage in this case does not come within the first exception, as being contrary to the law of nature

as generally recognized in Christian countries, such as polygamy or those involving incest; neither is it one specially prohibited by our statutes: Section 5217, B. & C. Comp. (L. O. L., Section 7017). Nor does our statute contemplate that such marriages as the one involved here shall be deemed void, but, if in violation of the statute, are only voidable.''

Whether the statutes of the State of Washington prohibit marriages between first cousins will not be considered for no reference is made in the complaint to the Code of that state. Nor was it necessary to do so on the assumption that a marriage valid where celebrated is valid everywhere for the wedding of the parties not having been solemnized in this state cannot be decreed void by a court in Oregon in a suit instituted for that purpose: Section 502, L. O. L.

Though the question is not now involved it would nevertheless seem that in order to justify a conviction an indictment charging the crime of marriage of first cousins should allege that the nuptial rites were solemnized within this state subsequent to May 19, 1893, when the statute went into effect amending Section 2853, Hill's Ann. Laws Or., so as to prohibit for the first time the marriage of persons of that degree of consanguinity. Upon this subject, however, see the case of *State* v. *Nakashima,* 62 Wash. 686 (114 Pac. 894, Ann. Cas. 1912D, 220).

2. A divorce can be granted only for the reasons specified in the statute: Section 507, L. O. L.; *Weber* v. *Weber,* 16 Or. 163 (17 Pac. 866). A marriage of first cousins when solemnized in another state or country is not thus interdicted, and as the wedding of the parties hereto was not celebrated in Oregon, the decree must be affirmed and it is so ordered.          AFFIRMED.