. Argued February 29; affirmed March 21, 1944

# MARCUS *v.* MARCUS

(147 P. (2d) 191)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK, and HAY, Associate Justices.

*W. L. Cooper,* of Portland (Andrew J. McCann, of Portland, on the brief), for appellant.

*James L. Means,* of Portland (John F. Gantenbein, of Portland, on the brief), for respondent.

HAY, J.

Plaintiff instituted this suit against defendant under the provisions of chapter 408, Laws of 1941, praying for a decree of separation from bed and board for a period of one year, with alimony, costs and attorney's fees. The complaint set forth the marital status of the parties and the necessary jurisdictional facts, and, under definite specifications, charged the defendant with cruel and inhuman conduct and personal indignities toward plaintiff, which rendered her life burdensome. The defendant answered by general denial, and affirmatively alleged, in effect, that no marriage relationship existed between the parties, in that, on May 1, 1943, the date of their "attempted" marriage, he did not have the legal capacity to enter into a marriage contract, for the reason that, on April 2, 1942, he entered into a lawful marriage with one Grace Myers, which marriage continued until March 29, 1943, on which day, at the suit of the said Grace, it

was dissolved by decree of the circuit court for Multnomah County, and less than six months (to wit, thirty-three days) had elapsed between the date of such divorce decree and the date of his "attempted" marriage to plaintiff. For reply, the plaintiff denied defendant's alleged prior marriage and divorce, and alleged affirmatively that, on October 25, 1941, defendant lawfully married one Bernice M. Maurer, which marriage continued until April 25, 1942, on which day, at the suit of the said Bernice, it was dissolved by decree of the circuit court for Multnomah County. The reply further averred that the defendant ought to be estopped from alleging his incapacity to contract marriage with the plaintiff, for the reason that, prior to their marriage, the plaintiff inquired of him concerning his marital status, and was informed by him that he had been married once previously to Bernice M. Maurer, had divorced her in the spring of 1942, and had been married to no other person, which statements the plaintiff believed, and, in reliance thereon, married the defendant.

At the hearing, the defendant was present in person and by counsel. The evidence on the part of plaintiff established the following facts: She is a young woman who was born and reared in the State of Wisconsin. She came to Portland, Oregon, in January, 1943. She had never been married. Shortly after coming to Portland, she became acquainted with defendant, and in March, 1943, they became affianced. Plaintiff then returned to her home in Wisconsin, without having fixed a definite date for the wedding. From Portland, the defendant continued his wooing with telegraphic messages and floral offerings, and finally it was agreed that the parties would be married in

Wisconsin on May 1, 1943. As the time for the wedding drew near, defendant went to Wisconsin, where he was made welcome by plaintiff's family and received into their home as a guest. The plaintiff being of the Roman Catholic faith and desiring to be wedded in church, the parties were married in the Cathedral of Christ the King, at Superior, Wisconsin, on May 1, 1943. They returned immediately to Portland, where the defendant had employment.

They lived together less than six weeks, and from the beginning their relationship was an unhappy one. Although defendant owned a residence in Portland, he required his wife to live with him in a single-room apartment. He showed his lack of affection for plaintiff by a boorish and inconsiderate demeanor toward her. He told her that she irritated him, and, on her putting her arm around him, told her to "get her so-and-so hands off him because they were damp." He informed her that he was about to enter the United States Army, and insisted that she should return to Wisconsin. Plaintiff was unwilling to do this, and tried to persuade defendant that it would be better if she should remain with him until he actually entered the Army. He thereupon intimated that, unless she returned to Wisconsin, he would abandon her, upon which threat plaintiff capitulated, and returned to her former home. For the journey from Portland to Superior, Wisconsin, involving three days' travel, he provided his wife with mere day-coach transportation and only ten dollars for incidental expenses.

Defendant did not enter the Army, but remained in Portland in civilian employment. He neglected, however, to communicate these facts to his wife, who learned of them through a friend. She thereupon wrote

to him, offering to return and "try to make a go" of their marriage. After waiting two weeks without any answer to her letter, on her own initiative, she returned to Portland. When she arrived there, she received a letter from the defendant, which had reached Superior after her departure and had been forwarded to her at Portland. From this letter, we quote:

> "* * * I know the way things went before, I don't believe we would ever make it, my mind just goes round & round, I have heard from the ex. in Calif. and that (is) why, I don't know what to do. Maybe the best thing for you to do is to get an anullment, or a divorce, as I wouldn't want to go on keeping hurting you, with my mind on someone else. * * *"

(By "ex.", we presume that defendant meant his former wife, or a former wife.)

The defendant offered no evidence, and the court, at the termination of the hearing, entered a decree in accordance with the prayer of the complaint, authorizing plaintiff to live separate and apart from her husband for one year from the date of the decree, awarding her $100 a month for her support during that period, and giving her judgment for her costs and for $250 attorney's fees. The defendant was restrained from selling, mortgaging or otherwise disposing of his property until he had either discharged the financial obligations laid upon him by the decree, or had given security therefor. He has appealed to this court.

■■ Defendant's first assignment of error is that the court erred in holding that plaintiff and defendant were legally married, and that plaintiff was entitled to the relief prayed for. He contends that, by sections 9-902 and 9-903, O. C. L. A., a marriage is invalid if

contracted within six months after the divorce of one of the parties. His counsel appear to assume that plaintiff admitted defendant's prior marriage to Grace Myers and the dissolution thereof by decree entered within six months of the marriage of the parties hereto. On the contrary, these matters were denied by plaintiff. One who seeks to show the invalidity of his marriage, by reason of the existence of a former marriage, is required to allege and prove that his spouse by such former marriage is still living, and that the marriage has not been dissolved by divorce. *In re Estate of De Force,* 119 Or. 556, 249 P. 632. Under our law, neither party to a suit for divorce may marry a third person until the expiration of six months from the date of the decree dissolving the marriage. Section 9-916, O. C. L. A., as amended by chapter 70, Laws of 1941. The defendant alleged his incapacity to contract marriage, by reason of his former marriage and the dissolution thereof within six months of his marriage to plaintiff, but he failed to prove such allegations. Having challenged the validity of his marriage to plaintiff, he had the burden of proof of such invalidity, there being a presumption that such marriage was valid. *Smith v. Smith,* 169 Or. 650, 131 P. (2d) 447. This assignment is without merit.

■ The next assignment is that the court erred in holding that plaintiff was entitled to separate maintenance. The argument is that the evidence failed to establish the existence of any of the causes for which separate maintenance may be decreed. One of the statutory causes authorizing the granting of a decree of separate maintenance is cruel and inhuman treatment or personal indignities rendering life burdensome. We are of the opinion that such proscribed con-

duct on the part of the defendant was fully established by the evidence.

■ The final assignment is that the court erred "in failing to dismiss the plaintiff's complaint after reading the complaint, answer and reply." The point is made that, "when any illegality appears from the complaint, or the answer and reply, it is the duty of the court itself to raise the question in due administration of justice." The argument is that, whereas the complaint alleges that plaintiff and defendant intermarried May 1, 1943, the reply pleads that defendant ought to be estopped to allege that he was divorced from Grace Myers Marcus on March 29, 1943, which plea of estoppel, appellant contends, admits that the defendant was divorced as alleged.

As to the effect of the plea of estoppel as an admission of the facts, against the allegation of which it is interposed, the appellant is mistaken. Such a plea neither admits nor denies the facts alleged, but simply denies the right of the party to allege them. *Page & Co. v. Smith,* 13 Or. 410, 413, 10 P. 833. It may well be doubted that estoppel may be pleaded in support of a marriage which is absolutely void. Schouler, Marriage, Divorce, Separation and Domestic Relations, (6 ed.) section 1162; 19 Am. Jur., Estoppel, section 39, notes 11, 12. However, that question is not before us, as the defendant-appellant offered no evidence to prove his alleged former marriage and divorce, and, hence, the pleaded estoppel was not brought into play.

■ No "illegality" appeared from the allegations of the complaint. The answer, however, does allege a violation of law but by defendant only, and he can hardly be heard to complain that the court failed to penalize the plaintiff because of that. Counsel for ap-

pellant do not appear to apprehend the meaning of the principle which they invoke. That principle was stated by Mr. Justice ROBERT S. BEAN, as follows:

"If the illegality appears from the complaint or the plaintiff's case, the court will, at any stage of the proceedings, dismiss the action although such illegality is not pleaded as a defense, or insisted upon by the parties, and may have been expressly waived by them. * * *" *Jackson v. Baker,* 48 Or. 155, 85 P. 512.

Obviously, the principle has no application here. The illegality of the marriage of these parties was not made to appear to the court, either by the complaint or by the plaintiff's case. In *Vnuk v. Patterson,* 118 Or. 602, 247 P. 766, 47 A. L. R. 394, cited by appellant, plaintiff sued for damages for breach of promise of marriage. Her evidence disclosed that, at the time of the alleged promise by the defendant, he was a married man, or, if he had been divorced, that six months had not elapsed since the decree. The plaintiff was well aware of those facts. She was not an innocent party to the transaction or deceived in any respect. These facts appearing by plaintiff's own case, this court, as a matter of public policy, held that the contract was invalid and that the plaintiff had no standing in court. The case is not in point as authority in the case at bar.

■ In our opinion, the record herein is free from even a suspicion of error. The decree is affirmed, with costs. Respondent asks for an allowance of additional attorney's fees. The statute permits us to make such award (Laws of 1941, chapter 408, section 12), and in this case we think that justice and equity require it. We, therefore, allow her the sum of $250 as attorney's fees on this appeal.