Argued December 4, 1968, affirmed January 29, 1969

IN THE MATTER OF THE ESTATE OF
COLETTE G. CHAPMAN, DECEASED
GARRETT, *Appellant, v.* CHAPMAN ET AL,
*Respondent.*
449 P. 2d 856

*Cleveland C. Cory,* Portland, argued the cause for appellant. With him on the briefs were Charles J. McMurchie and Phillip D. Chadsey, Portland.

*Gordon M. MacLaren,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and MENGLER, Justices.

HOLMAN, J.

This is a proceeding for a determination of the heirs of Colette G. Chapman who died intestate while a resident of this state. Defendant Robert R. Chapman was appointed administrator of decedent's estate pursuant to a petition which alleged that he was the husband and that Brent G. Garrett was the son of decedent. Thereafter, plaintiff, the guardian of Brent, brought this proceeding contending that Brent was the sole heir of decedent and that defendant's purported marriage to decedent was void.

Decedent was divorced from Brent's father in the state of Montana on February 16, 1966, while a resident thereof. At all times relevant Montana had the following statute:

"WAITING PERIOD AFTER DIVORCE. It is unlawful for any person, who is a party to an action for divorce in any court in this state, or for any Montana resident who is a party to an action for divorce elsewhere, to marry again until six months after judgment of divorce is granted, and the marriage of such person solemnized before the expiration of six months from the date of the granting of judgment of divorce shall be void." (Rev Code Mont § 48-151, repealed by Sec 1, Ch 63, Laws 1967)

On March 6, 1966, decedent, Brent and the defendant left Montana with all their personal possessions intending to move to Portland, Oregon. Enroute to Portland they stopped at Coeur d'Alene, Idaho, where defendant and decedent secured a license and went through a marriage ceremony. They stayed that night in Coeur d'Alene and proceeded to Portland the following day. Defendant secured a job in Portland and he and decedent established a home and lived as man and wife until decedent's death on May 9, 1966. Neither of them at any time intended to return to the state of Montana following their leaving that state and, in fact, did not do so during decedent's lifetime.

1. The general rule is that a marriage which is recognized as valid in the state where it was performed will be recognized in Oregon. *Boykin v. Industrial Accident Com.*, 224 Or 76, 81, 355 P2d 724 (1960); *Huard v. McTeigh*, 113 Or 279, 287-288, 232 P 658 (1925); *Ollschlager's Estate v. Widmer*, 55 Or 145, 154, 105 P 717 (1909); *Albina Engine and Machine Works v. O'Leary*, 328 F2d 877, 879 (9th Cir 1964).

There may be exceptions to the general rule where the policy of this state dictates a different result than would be reached by the state where the marriage was performed. See the language in *Kelley et al v. Kelley*, 210 Or 226, 236-237, 310 P2d 328 (1957). We know of no policy of this state which dictates an abandonment of the general rule in the present case. Such policy as there is, would tend towards holding any marriage valid which was entered into in good faith. See *Ollschlager's Estate v. Widmer, supra*, at pp 150-151. Therefore, in order to determine the validity of the marriage in question, we must look at the law of Idaho where the marriage was performed. There is no con-

tention that the Idaho marriage was not regularly performed pursuant to the ceremonial law of Idaho.

Idaho's statutory law is embodied in Idaho Code, § 32-202, which is as follows:

"Persons who may marry—Any unmarried male of the age of 18 years or upward, and unmarried female of the age of 18 years or upward, and not otherwise disqualified, are capable of consenting to and consummating marriage. * * *"

Defendant contends that the words "not otherwise disqualified" in the statute were intended to be given extraterritorial application and, therefore, it must be determined whether the decedent and defendant were disqualified from marriage under the law of Montana. Presuming, but not deciding, that defendant's contention is correct, we have concluded that the marriage was, nevertheless, valid.

The marriage would be valid because the Montana statutes when considered as a whole, indicate that it was the intention of Montana's legislature to permit marriage under the facts here present. Section 48-151 Mont Rev Code, above set forth, and § 48-150 which defines the validity in Montana of marriages performed outside the state, were both enacted at the same time as Sections 11 and 9, respectively, of Ch 232, Laws of Montana, 1963. Section 48-150 is as follows:

"48-150. *Validity of foreign marriages.* (1) All marriages which are valid by the law of the state or nation where at least one (1) of the parties was domiciled at the time of the marriage and where both intended to make their home thereafter are valid in this state.

"(2) All marriages which are valid by the law of the state or nation where the marriage took place

are valid in this state unless invalid under the laws of the state or nation where at least one (1) of the parties was domiciled at the time of marriage and where both intended to make their home thereafter.

"(3) The courts of this state may refuse to give a particular effect to a marriage contracted in another state or nation if to do so would be contrary to a strong public policy of this state."

■ The first section of the above statute has no application. Both parties to the marriage intended thereafter to make their home in Oregon. At the time of the marriage neither was yet domiciled in Oregon. There was no state which qualified as the domicile of one of the parties to the marriage and also as the place in which both intended to live. Both requirements were necessary.

■ The third section of the statute is also not applicable because it does not provide for the validity or invalidity of any marriage. It merely provides that Montana courts may deny a particular effect to an out-of-state marriage if it contravenes strong Montana policy. A marriage must exist before it can be denied a particular effect.

■ The second section is applicable. It provides that the marriage is valid in Montana if it was valid by the laws of the state where it was performed, i.e., Idaho, unless it falls within the exception therein contained. The present factual situation does not fall within the exception because there is no state which is both the domicile of one of the parties and the place where both intended to make their home after the marriage. Defendant and decedent intended to make their home in Oregon but had not yet established an Oregon domicile at the time of their marriage.

■ Under Mont Rev Code, § 48-150(2), the marriage would be recognized as valid in Montana. A marriage cannot be "valid" under Mont Rev Code, § 48-150 (2), and at the same time be "void" under Mont Rev Code, § 48-151. Hence, it is improbable that Montana intended Mont Rev Code, § 48-151 to apply to decedent's ability to remarry if she married elsewhere in conformance with the laws of the place of marriage and *the parties to the new marriage had no intention of returning to Montana to make their home.*

■ This line of analysis depends upon a determination that the reference to "the law of the state or nation where the marriage took place" in § 48-150(2), is a reference to the local law of the state of marriage exclusive of the consideration that state may give to the law of other states, including Montana. The analysis is dependent upon such a determination because otherwise a circular situation would exist between the above-quoted portion of the Montana statute and the words "not otherwise disqualified" in the Idaho marriage statute, as we have assumed the Idaho language was intended to have extraterritorial effect. Each state would be applying the law of the other. We believe it to have been the intention of the Montana legislature to refer only to the local law of the foreign state. It is apparent from the language of the statute that it was intending to adopt the approach of Restatement (Second) of Conflict of Laws §§ 121, 122, 129, 130, 131, 132, 134 (Tent. Draft No. 4, 1957). The tenor of the Restatement (Second) is a recognition of the policy of upholding the validity of marriages entered into in good faith. It gets away from the concept of looking to the state of domicile to test the validity of marriages when that state is not the state of paramount interest, i.e., when not the state

of domicile of one of the parties and the state where both intended to reside after marriage. It is a recognition that when the domicilary state is not the state in which the parties intend to make their home, the marriage should be recognized if valid by the local law of the state of celebration. To hold that it was Montana's intention that Idaho apply Montana's law relative to eligibility to marry would defeat the Restatement's (Second) purpose to make marriages valid unless contrary to the law of a state of paramount interest.

We believe it was Montana's intention to reach the result of § 131 of the Tentative Draft of the Restatement (Second) which is as follows:

> "If a person, having obtained a valid divorce in a state where by statute each party to a divorce granted in the state is forbidden to marry again for a certain time or during the life of the other party, goes into another state and within the prohibited time there enters into a marriage which complies with the requirements of that state, the marriage is valid everywhere even in the state where the divorce was granted, unless
>
> "(a) the marriage takes place at a time when the divorce decree is not yet final; or
>
> "(b) the party who remarries is both a domiciliary of the state where the divorce was granted and also intends to make his home there with his new spouse, and the statute which forbids the parties to marry is interpreted as being applicable to such a marriage in another state."

The decree of the trial court is affirmed.