Argued March 1, affirmed May 8, reconsideration denied June 14, petition for review denied, 284 Or 1 (1978)

# In the Matter of the Estate of Jack Steinberg, Deceased.

## STEINBERG, *Appellant—Cross-Respondent,*
## *v.*
## STEINBERG, *Respondent—Cross-Appellant.*

### (No. 120-518, CA 7814)

578 P2d 487

James A. Cox, Lake Oswego, argued the cause and filed the brief for appellant—cross-respondent.

David N. Hobson, Portland, argued the cause and filed the brief for respondent-cross-appellant.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Jack Steinberg died intestate on April 4, 1974. On April 10 respondent—cross-appellant Maxine Steinberg was appointed personal representative on the basis of a petition alleging that she was his widow.[1] On October 21, 1974, the personal representative filed her final account and petition for decree of final distribution. Appellant Loran T. Steinberg, decedent's son, filed objections to the personal representative's final accounts. After protracted litigation the circuit court entered an order and judgment settling the account and objections and providing for final distribution, from which the present appeal and cross-appeal were taken.

Appellant first assigns as error the ruling that Maxine Steinberg was validly married to decedent at the time of his death and entitled to one-half of his estate.[2] Maxine was previously married to Paul Snyder, against whom she instituted a California divorce suit sometime prior to June 26, 1967. On that date Snyder entered an appearance in the divorce proceeding. On March 27, 1968, Maxine obtained an interlocutory decree of divorce. On Agust 24, 1968, and without a final decree having been entered in the California divorce, she and Jack Steinberg had a ceremonial marriage in Nevada. After the marriage they lived together in Oregon until her mother became seriously ill. She then moved to California. Although they visited one another frequently, she and decedent did not establish a home together again. On March 7, 1969, Maxine Steinberg obtained in California a final

---

[1] ORS 113.085(1) provides in relevant part that upon the filing of an appropriate petition the probate court shall appoint

"* * * a qualified person it finds suitable as personal representative, giving preference * * *

"* * * * *

"(b) [t]o the surviving spouse of the decedent * * *."

[2] ORS 112.025 provides:

"If the decedent leaves a surviving spouse and issue, the surviving spouse shall have a one-half interest in the net intestate estate."

[ 295 ]

decree of divorce from Snyder, without his making an appearance or being served at that time. After the validity of her marriage to decedent had been made an issue in the present proceeding, she obtained an *ex parte* California order which purported to enter the final dissolution of the Snyder marriage *nunc pro tunc* as of June 26, 1968. That judgment was subsequently vacated in a proceeding collateral to this one on the ground that it had been made without jurisdiction.

■ When the validity of a marriage is attacked by reason of its having been entered into while one of the parties was still married to another person, there is a presumption that the second marriage is valid. *Smith v. Smith,* 169 Or 650, 131 P2d 447 (1942); *Booker v. Booker,* 27 Or App 779, 557 P2d 248 (1976). The prior marriage is presumed to have been ended either by dissolution or annulment proceedings or by death of the other party before the second marriage began. *Smith v. Smith, supra.* In *Smith,* a case involving a dispute similar to the one involved here, the court stated:

> "* * * There is a strong presumption that such [the subsequent] marriage is valid. Indeed, it is one of the strongest disputable presumptions known in law. Defendant having shown a ceremonial marriage consummated in form of the law, it was incumbent upon plaintiffs to establish by clear and convincing evidence: (1) A prior marriage by competent parties; (2) that such marriage has never been dissolved or annulled; and (3) that defendant's former spouse was alive at the time of the subsequent marriage * * *." 169 Or at 652.

Even if the record of the California proceedings indicating that Maxine Steinberg had obtained a final judgment of divorce from Snyder six months after her marriage to decedent had been sufficient to controvert the presumption in other respects,[3] it was not clear

___

[3] *Smith v. Smith, supra,* suggests that one seeking to controvert the presumption must also demonstrate that the other party to the first marriage (in this case Snyder) had not at the time of the second marriage obtained a dissolution or annulment in any jurisdiction where he might reasonably have been expected to do so.

and convincing evidence that Snyder was still alive at that time.[4]

■ Appellant argues that the June 26, 1967 appearance by Snyder in the California proceedings, coupled with the presumption in ORS 41.360(32) that a thing once proved is presumed to continue for as long as is usual, was sufficient to controvert the presumption that Snyder was dead at the time of the August 24, 1968 marriage. It was not. The presumption that the subsequent marriage is valid prevails over the presumption that the prior spouse continued to live. *Smith v. Smith, supra.*

■ Appellant contends additionally that under the Full Faith and Credit Clause of Article IV, section 1 of the United States Constitution, we must give effect to the California decree and that it conclusively established as against Maxine Steinberg that her former husband was alive at that time. There is no indication that that issue was actually litigated, nor does appellant cite authority for the proposition that it was necessarily adjudicated at the time of the final decree that Snyder was still alive. The contention is, therefore, without merit.

Appellant makes other arguments based upon Maxine Steinberg's alleged superior access to information concerning Snyder. To accept those arguments, however, would in effect shift the burden to her to prove that Snyder was dead, thus impermissibly undermining the presumption. *Smith v. Smith, supra.*

Shortly after Jack Steinberg's death, Maxine Steinberg took nearly all the furnishings from his apart-

---

[4] Appellant relies primarily upon two cases for the proposition that evidence of a final dissolution of the first marriage obtained subsequent to the second ceremony *fully* controverts the presumption. Neither of the cited cases supports that contention. In *Lewis v. Department of Labor and Industries,* 190 Wa 620, 70 P2d 298 (1937), the former spouse actually appeared in the divorce proceedings subsequent to the second marriage as well as in the proceeding in which the presumption was applied. In *Fowler v. Fowler,* 96 NH 494, 79 A2d 24 (1951), the record showed that the other party to the first marriage was served at the time of the final dissolution.

ment. Most of these items she shipped to her residence in California. The rest she sold or gave away. She testified that decedent had told her before his death that he was giving those things to her. The trial court found that she had converted the furnishings and assessed against her interest on the amount converted from the approximate date of conversion. The court reduced the amount on which she was to pay interest by $5,000 from the date on which a partial distribution in that amount was made to appellant. Despite the conversion, the court found that Maxine Steinberg had rendered service to the estate as personal representative and awarded her compensation at the statutory rate based only upon the portion of the estate not converted.

■ Appellant assigns as error the reduction in interest charged to the personal representative on account of the distribution to him. When that partial distribution was made, the principal of the estate was reduced. Because Maxine Steinberg, as decedent's widow, was entitled to one-half the interest that sum would have earned had it remained in the estate, it was fair to impute to her an equal distribution on that date. That was the effect of the court's ruling.

■ Appellant also assigns as error the allowance of compensation to the personal representative. He argues that she should have been denied compensation on the grounds that she made a spurious claim to be decedent's widow and that she had converted a substantial portion of the assets. Because of our ruling on appellant's first assignment of error the first ground is without merit. Although the court found that Maxine had converted the furnishings, it concluded that she had done so in the mistaken, if unwarranted, belief that they had been given to her and not in bad faith. Under those circumstances the award of compensation was proper.

■ Appellant next assigns as error the failure of the trial court to surcharge the personal representative

because she kept more funds in a non-interest-bearing checking account from April 15, 1974, through May, 1975, than ultimately proved to be needed for estate expenditures. Most of the liquid assets of the estate were kept in a savings account, and the personal representative accounted for all interest earned on that account. The trial court ruled that under all the circumstances a surcharge was not appropriate. We find no reason to disturb that ruling.

Finally, appellant asserts that the trial court improperly allowed the personal representative to charge miscellaneous expenditures against the estate. We find no abuse of discretion in allowing those charges. *Veberes v. Phillips,* 23 Or App 363, 542 P2d 928 (1975), *rev den* (1976).

## Cross-Appeal

■ Maxine Steinberg cross-appeals from that portion of the order and judgment assessing against her interest on value of the converted furnishings shipped to California. She asserts that the $10,000 value placed upon those goods by the trial court was based solely upon speculation, there being no credible evidence to support that or any other figures. The items shipped to California were never inventoried or appraised. The court's valuation was apparently based upon the insurance contract issued by the company which moved the goods. Maxine Steinberg or her daughter contracted for $10,000 coverage, the maximum amount available on the shipment. Although that figure may have in fact been chosen at the suggestion of a representative of the moving company, it nevertheless provided an evidentiary basis for the court's ruling. It was the personal representative's obligation to inventory and to fix values for the estate's assets. She did not do so. She should not be able to avoid a surcharge by relying on her own nonfeasance. It was proper for the trial court to treat

the shipping value as it did when that was the only evidence available.

Affirmed.