Argued and submitted May 15, 1981, reversed and remanded February 8,
reconsideration allowed April 26, 1982, former opinion adhered to
(57 Or App 145, 643 P2d 1351)

In the Matter of the Estate of
Dale Allen Davis, Deceased.

DAVIS,
*Appellant,*

*v.*

DAVIS,
*Respondent.*

(No. 50-80-03938, CA 18625)

640 P2d 692

Ann Aiken, Eugene, argued the cause for appellant. On the brief were Tim J. Helfrich and Sahlstrom & Dugdale, Eugene.

Steven L. Philpott, Eugene, argued the cause for respondent. With him on the brief was Armstrong & Philpott, P.C., Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Petitioner sought appointment as personal representative to administer the intestate estate of her deceased husband, contending she is entitled to preference in appointment under ORS 113.085. The trial court held that her marriage to decedent was void, because decedent was still married to his first wife at the time he married petitioner, ORS 106.020, and, therefore, denied her petition. She appeals.

Petitioner and the decedent, Dale Davis, were first married in Reno, Nevada on January 27, 1974, and, except for one three-month period, they lived together as husband and wife until his death in March, 1980. At the time of the ceremony, however, Dale's marriage to his first wife, Darline, was not yet dissolved, although a divorce suit was pending. Ruth did not learn this until after they had been ceremonially married.

On April 22, 1975, Dale, petitioner and Darline appeared in circuit court for the divorce hearing. The divorce was granted, and Darline's attorney was instructed by the court to prepare a decree in accordance with the provisions of a stipulated property settlement agreement. Following the hearing, petitioner and Dale met with his lawyer, but there is disagreement over what was said. Petitioner recalls the lawyer telling her and Dale that they could legally marry in 60 days. The lawyer recalls telling them that they could marry 60 days after the decree was signed. In any case, they went through a second marriage ceremony in Reno on July 4, 1975. She did so under the impression that they would thereby be validly married; it is uncertain what Dale thought, for his lawyer had informed him on May 21 that the divorce decree had still not been signed. In fact, because of Darline's refusal to sign the settlement agreement until August 20, the actual decree was not entered until September 22, 1975. Dale's lawyer testified that he informed Dale on that day that the July 4 marriage was invalid. Petitioner, however, did not learn until after Dale's death that he was still married to Darline at the time of the second ceremony.

■ ■ Petitioner first contends that the trial court should have treated her marriage to the decedent as valid, because

its validity cannot be challenged after decedent's death. The general law is that a third party, such as an executor,[1] may not object to, or have disallowed, a *voidable* marriage. *Dibble v. Meyer,* 203 Or 541, 546, 280 P2d 765 (1955). Rather, an annulment proceeding must be initiated by the husband or wife. A voidable marriage is valid unless annulled, *State v. Anderson,* 239 Or 200, 207, 396 P2d 558 (1964), and a suit for annulment does not survive the death of one of the parties. *Hunter v. Craft,* 37 Or App 545, 550-551, 588 P2d 617 (1978), *reversed on other grounds* 287 Or 465, 600 P2d 415 (1979).

■   A *void* marriage, on the other hand, is invalid from the outset and may be challenged by third parties. *Garrett v. Chapman,* 252 Or 361, 449 P2d 856 (1969). A marriage solemnized in Oregon is clearly void if either party to the marriage had a then-living husband or wife. ORS 106.020. Although Oregon recognizes marriages that are valid in the state where performed, *Boykin v. Industrial Accident Com.,* 224 Or 76, 81, 355 P2d 724 (1960), it is undisputed that such a marriage is void under Nevada law as well. Nev. Rev. Stat. § 125.290 (1977).

Petitioner argues, nevertheless, that such a marriage is not void in Oregon, but at most voidable, because an old case never formally overruled, *Leefield v. Leefield,* 85 Or 287, 166 P 953 (1917), states that a marriage between prohibited persons, if solemnized in another state, is valid in Oregon irrespective of whether it has any legal force in the state where performed. Apart from certain problems with the reasoning in *Leefield,*[2] and whether it would control if it stood alone, we think it is enough to say that in more recent cases Oregon courts have passed on the validity of out-of-state marriages, *Huard v. McTeigh,* 113 Or 279, 284-285, 232 P 658 (1925); *Kelley et al v. Kelley,* 210 Or 226, 230-232, 310 P2d 328 (1957); *Steinberg v. Steinberg,* 34

---

[1] Decedent's son, Michael L. Davis, was appointed personal representative. He challenged Ruth's petition for appointment and is respondent here.

[2] Under *Leefield v. Leefield,* 85 Or 287, 166 P 953 (1917), an Oregon court would have to recognize a second, out-of-state marriage even if the first marriage were never terminated.

Or App 293, 295-296, 578 P2d 487, *rev den* 284 Or 1 (1978). In fact, it appears to us that *Leefield* was overruled *sub silentio* in *Huard.* It was proper for the trial court to rule on the validity of petitioner's marriage to Dale.

We hold, however, that the trial court was incorrect in ruling that that marriage was void. A party challenging the validity of a marriage, such as petitioner's, has a heavy burden of proof. In such cases the courts have invoked a strong presumption that marriages are valid. The Supreme Court stated the rule in *In Re Estate of De Force,* 119 Or 556, 249 P 632 (1926), as follows:

> "It is incumbent upon a party who asserts the invalidity of such a marriage, upon the grounds that one of the parties thereto has been formerly married, to allege and prove that *the parties to the alleged former marriage were eligible to consummate the same,* and that the spouse of such former marriage is still living; that the first marriage has not been dissolved by divorce or by the death of one of the parties." (Emphasis added.) 119 Or at 561-562.

This same rule was applied in *Routledge v. Githens et al,* 118 Or 70, 245 P 1072 (1926); *Alto v. State Indus. Acc. Com. et al,* 118 Or 231, 246 P 359 (1926); *Smith v. Smith,* 169 Or 650, 131 P2d 447 (1942); *Marcus v. Marcus,* 173 Or 693, 147 P2d 191 (1944); *Booker v. Booker,* 27 Or App 779, 557 P2d 248 (1976); and *Steinberg v. Steinberg, supra,* but with the additional requirement that the challenger must show that the prior marriage was regularly solemnized. A closer look at these cases is useful.

In *De Force,* the husband died, presumably intestate; the issue was appointment of the personal representative. Decedent's brother challenged the widow's right to select the personal representative, alleging that her first marriage had not been dissolved at the time of her marriage to decedent and, thus, she was not his wife. The court held for the widow because the brother's petition: (1) had failed to "directly allege that [the widow] was ever married to [the first husband]," 119 Or at 561, (however, the petition alleged that her *divorce* from him was invalid and alleged the defects in the divorce with great particularity); (2) failed to show that the first husband was alive at the time of widow's marriage to decedent; (3) failed to show

that either the widow or the alleged first husband "was eligible to contract that relation with each other," 119 Or at 561; and (4) "It does not appear from the petition or from the record that [the first husband] never obtained a valid decree of divorce from [the widow]." 119 Or at 563.

In *Routledge,* a case decided several months earlier, the husband sought to have his present marriage declared invalid, alleging that his wife had a prior marriage and that the divorce decree for that marriage was void because of jurisdictional defects. The wife admitted, for her first defense, that she went through "the form of marriage" with her first husband, but alleged that the divorce decree was proper. As a second defense, she alleged that at the time she went through "the form of marriage" with her first husband, he had a then-living wife in New Jersey. The opinion says nothing more than this, but the wife's purpose in raising this second defense could only have been to argue that because of her first "husband's" New Jersey marriage, her marriage to him was void and, therefore, she was single at the time she married her second husband, regardless of any defects in the thus superfluous divorce decree.

The court stated the rule in language very similar to *De Force* in order to sustain the marriage at issue, but it is unclear precisely how the plaintiff-husband's proof fell short. The court mentioned that he failed to show that his wife's alleged first husband was alive at the time of her marriage to him, but then seemed to rely heavily on the fact that the record did not show either that the parties to the New Jersey marriage were eligible to contract it or that this first husband did not divorce his New Jersey wife, 118 Or at 75-76. The court's logic seems to have failed it on this point, however, for any defect in the New Jersey marriage would cut against the validity of the marriage at issue and yet it is clear that the court thought otherwise. Thus, this lapse in logic should not undermine the fact that the court thought that it was validating a *third* marriage, in part because the challenger had failed to show both the eligibility of the parties to a *first* marriage and that a divorce in this first marriage had never occurred. Even more curious, however, is the fact that the New Jersey marriage was between *third parties;* that is, the validity of a marriage

between A and B hinged on whether it could be shown that C and D were eligible to contract their marriage.

In the other cases cited above, the "widow" was held to be decedent's wife, because the challenger had failed to prove that the prior spouse was still alive at the time of the marriage at issue, *(Smith* and *Steinberg),* or because the challenger had failed to prove that there had not been a dissolution of the earlier marriage prior to the marriage at issue *(Alto, Smith,* and *Booker).* In *Marcus,* the challenger alleged a prior marriage but did not offer any evidence at trial, and, therefore, failed to satisfy all elements of *De Force.*

Our review of these cases illustrates how very difficult it is for a challenger to satisfy the *De Force* rule. As Judge Fort observed in his concurrence in *Booker:*

> "The reality of the majority's opinion is that the [challenger] is compelled to prove a negative and one that is virtually impossible to establish, namely, that [decedent] did not somewhere at some time divorce [his first wife] before his purported common law marriage to [his second wife] in 1973. * * * " 27 Or App at 787.

We also recognize the extreme difficulty of satisfying that requirement. Moreover, the problem Judge Fort identified is even broader: the "virtually impossible" task of proving that there was never a dissolution, relied upon entirely or, in part, in *De Force, Alto, Routledge,* and *Smith,* as well as *Booker,* is no more difficult than proving that the parties to the earlier marriage were eligible to contract it (also a negative, because it must be shown that neither had ever, anywhere, been previously married but not divorced) — which the court relied on in part in *De Force* and *Routledge.* More illuminating, *De Force* requires the challenger to prove events which have only the most remote connection to the relationship at issue; that was especially true in *Routledge,* where the validity of one marriage hinged on events associated with a marriage "twice removed."

The net result of the *De Force* rule is that the decedent's "wife" at the time of his death is, in practical effect, his spouse for purposes of the probate code, because of the nearly insurmountable burden of proving that the last marriage is invalid. We have no doubt that the

Supreme Court understood the significance of this rule when the court adopted it. Although the court itself has not justified the rule, we perceive that the policy behind imposing this heavy burden is to further the policy of the probate code. That is, whatever the policy behind ORS 106.020 — presumably prevention of bigamy — the policy behind providing for the distribution of property to the spouse of an intestate decedent is surely to provide for one who played the part of spouse in his life, in accordance with the decedent's presumed intent. Moreover, the legislature has determined that fair treatment entitles a spouse to a certain "forced share" regardless of the decedent's actual wishes. ORS 114.105. A woman like petitioner, who, in good faith, went through two wedding ceremonies with the same man, who lived as his wife for six years, and who throughout the "marriage" reasonably assumed that she was legally married and thus had expectations of the legal rights accorded married persons, is certainly worthy of the protection of the probate laws. Moreover, there is a crucial distinction between invalidating the marriage of a living couple and invalidating a marriage after the death of one of the parties: in the second case the parties cannot correct the deficiency.

■ In any event, *De Force* represents the law applicable to these facts and we must apply it. Our examination of the record[3] reveals that it was not proven that Dale and Darline were eligible to contract their marriage.[4] Accordingly, we hold that the trial court erred in failing to recognize the validity of petitioner's marriage to decedent and in denying her petition for appointment as personal representative.[5]

Reversed and remanded.

[3] In *De Force* the court examined the record for itself to determine whether the rule was satisfied. 119 Or at 561.

[4] It was stipulated that "Ruth M. Davis and Dale Allen Davis were married in a ceremony in Reno, Nevada, on January 27, 1974. Dale Allen Davis had been previously married to Darline H. Davis, * * * ." We interpret this to mean that Dale and Darline went through the form of marriage. We do not interpret the stipulation to concede that they entered into a valid marriage, because then the previous sentence would have to be interpreted to mean that Ruth and Dale also entered into a valid marriage, and clearly there was no agreement on that.

[5] Because we hold that petitioner's Nevada marriage was valid, we need not consider her contention that a valid common law marriage was created on the basis of a four-day business trip to Texas.