In the Matter of the Estate of
Robert Werden, Deceased.

Darin H. WERDEN,
*Appellant,*

*v.*

Linda Gayle THORPE,
Personal Representative of the Estate of
Robert Werden, Deceased, and
Linda Gayle Thorpe Werden, Personally,
*Respondents.*

(90-P-0226; CA A73740)

867 P2d 557

G. Kenneth Shiroishi argued the cause for appellant. With him on the briefs were Dunn, Carney, Allen, Higgins & Tongue, Dennis R. Ingram and Ingram, Rich and Hall.

Ronald B. Versteeg argued the cause for respondent Linda Gayle Thorpe, Personal Representative. With him on the brief was Schultz, Salisbury, Cauble & Versteeg.

William H. Ferguson filed the brief for respondent Linda Gayle Thorpe Werden, personally.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

DURHAM, J. pro tempore.

## DURHAM, J. pro tempore

Darin H. Werden (Darin), the son of decedent Robert Werden (Werden), filed a petition to set aside Werden's 1983 will, which had been admitted to probate. He alleged that, as a matter of law, the will had been revoked in 1989 by Werden's marriage to respondent Linda Thorpe-Werden (Linda). After a trial, the court entered judgment in favor of respondents. We affirm.

Werden met Linda in 1975, while he was married. He later divorced his first wife. In November, 1978, Werden and Linda went to Los Barriles, a small town in Baja, Mexico, with a number of friends and Werden's sister, Nancy Amitin. While there, Werden married Linda in a ceremony performed by the town's mayor. Amitin described it as consistent with a traditional marriage ceremony, and she and another guest signed what appeared to be an official document afterwards. The location of that document is not known, and it is undisputed that no formal record of the marriage exists.

In 1983, Werden fought with Darin and executed a new will in which he disinherited his son and left his entire estate to Linda. Werden told the attorney that he was uncertain about the legal effect of the 1978 Mexican marriage and instructed the attorney to include a declaration in the will that Werden was not married. In 1989, Werden and Linda went through a marriage ceremony in Oregon which they, and those in attendance, described as a "reaffirmation" ceremony. Werden died in August, 1990.

Darin argues that the 1978 Mexican marriage was null and void, without legal effect, and, therefore, Werden was not married when he executed his 1983 will. He contends that, when Werden married Linda in 1989, the 1983 will was revoked by operation of law under ORS 112.305.[1] The trial

---

[1] ORS 112.305 provides:

"A will is revoked by the subsequent marriage of the testator if the testator is survived by a spouse, unless:

"(1) The will evidences an intent that it not be revoked by the subsequent marriage or was drafted under circumstances establishing that it was in contemplation of the marriage; or

"The testator and spouse entered into a written contract before the marriage that either makes provision for the spouse or provides that the spouse is to have no rights in the estate of the testator."

court rejected Darin's position. It held that Darin had not satisfied his burden to prove that the 1978 marriage was not valid and that he was without standing to challenge the validity of the marriage. It also held that Werden's will showed an intent that it would not be revoked by a later marriage and, thus, ORS 112.305 did not apply.

■ ■ In order to challenge the validity of Werden's and Linda's Mexican marriage, Darin must show that it was void *ab initio*:

> "The general law is that a third party, such as an executor, may not object to, or have disallowed, a *voidable* marriage. *Dibble v. Meyer*, 203 Or 541, 546, 280 P2d 765 (1955). Rather, an annulment proceeding must be initiated by the husband or wife. A voidable marriage is valid unless annulled, *State v. Anderson*, 239 Or 200, 207, 396 P2d 558 (1964), and a suit for annulment does not survive the death of one of the parties. *Hunter v. Craft*, 37 Or App 545, 550-551, 588 P2d 617 (1978), *reversed on other grounds* 287 Or 465, 600 P2d 415 (1979).
>
> "A *void* marriage, on the other hand, is invalid from the outset and may be challenged by third parties. *Garrett v. Chapman*, 252 Or 361, 449 P2d 856 (1969)." *Davis v. Davis*, 55 Or App 982, 985, 640 P2d 692, *on recon* 57 Or App 145, 643 P2d 1351 (1982). (Emphasis in original; footnote omitted.)[2]

The party challenging the validity of a marriage has a heavy burden of proof to overcome the strong presumption that marriages are valid. *Davis v. Davis, supra*, 55 Or App at 986. On *de novo* review, we agree with the trial court that Darin failed to meet that burden here.

■ Darin argues that, under Mexican law, the marriage was void, because it was not performed in strict accordance with the laws of the place where the ceremony took place. However, the Civil Code of Mexico demonstrates that,

---

[2] ORS 107.005(1) sets out the right of a third party to challenge a void marriage:

"A marriage may be declared void from the beginning for any of the causes specified in ORS 106.020; and, whether so declared or not, shall be deemed and held to be void in any action, suit or proceeding in which it may come into question."

ORS 106.020 provides that void marriages are those in which either party was already married or when the parties are first cousins or any nearer kin to each other.

although the marriage might have been voidable, it was not void *ab initio*. Chapter IX, entitled "Of Void and Illegal Marriages," provides:

"Art. 235.—The following are grounds for nullity of a marriage:

"I. Error regarding the person with whom it is contracted, when one spouse, believing he is contracting a marriage with a specified person, contracts it with another;

"II. When the marriage was performed while any of the impediments enumerated in article 156 existed;

"III. When [the marriage] was performed in contravention of the provisions of article 97, 98, 100, 102, and 103.

"Art. 236.—The action of nullity founded on error can be brought only by the deceived spouse, but if the latter does not complain of the error immediately upon perceiving it, the consent shall be considered ratified and the marriage shall remain effective, unless some other impediment exists to annul it.

"* * * * *

"Art. 249.—Nullity founded on the lack of formalities essential for the validity of the marriage, may be alleged by the spouses or by anyone having an interest in proving that there was no marriage. It may also be declared at the request of the Department of Public Prosecution."

Darin contends that, under Article 235, if any one or more of the "prohibited circumstances" in subsection III existed at the time of the marriage ceremony, "the 'marriage' would be invalid from the outset; it would not exist as a legal fact." He argues that, with the possible exception of the marriage record, which is prepared and signed after the ceremony, the civil code requires an application and documents to be prepared and filed *before* the wedding. He contends that, because it is undisputed that those requirements were not met, the marriage is void.

When Article 235 is considered in the context of other code provisions, it does not support Darin's conclusion that marriages are void at the outset unless there is compliance with all of the requirements of subsection III. Article 235 contains three subsections that address the validity of marriages. An "error" under subsection I may be challenged by a spouse, but must be challenged immediately or the marriage

will be effective *in the absence of an impediment.* The impediments to marriage in Article 156, referred to in subsection II, are central to the nature of the couple and their relationship to each other. They include, for example, lack of age, relationship by ''legitimate or natural consanguinity,'' adultery, duress, and idiocy.[3] Only two may be negated:

> ''Of these impediments [in article 156] the only ones for which a dispensation can be given are the lack of age and relationship by consanguinity in a collateral line of unequal degree.''

In contrast, the articles listed in subsection III are very different in nature from the circumstances set out in the articles listed in subsection II. They address the civil requirements for formalizing the marriage contract: witnesses, medical certificates, even fingerprints. To accept Darin's interpretation would require that no marriage would be valid if a party or official failed to fingerprint the parties or to record names, surnames, ages, occupations, domiciles or

---

[3] Article 156 provides:

''The following are impediments for entering into the contract of a marriage:

''I. The lack of age required by law when no dispensation has been granted;

''II. The lack of consent of him or of those who exercise parental authority or of the guardian or judge in the respective cases;

''III. Relationship by legitimate or natural consanguinity, without limitation of degree in the direct ascendant or descendant line. In the collateral line of the same degree the impediment extends to brothers and sisters and half-brothers and sisters. In the collateral line of different degree, the impediment extends only to uncles and aunts and nephews and nieces, provided they are in the third degree and have not obtained a dispensation;

''IV. Relationship by affinity in the direct line without any limitation;

''V. Adultery between the persons who desire to contract marriage, when such adultery shall have been judicially proved;

''VI. Attempt against the life of either of two married persons, in order to contract marriage with the one remaining free;

''VII. Serious duress or fear. In case of abduction, the impediment subsists between the abductor and the woman abducted, so long as the latter is not restored to a safe place where she can freely express her will;

''VIII. Habitual drunkenness, the morphine habit, the ether habit, and the undue and continued use of other enervating drugs. Incurable impotence for copulation, syphilis, insanity, and chronic and incurable diseases which are also contagious and hereditary;

''IX. Idiocy and imbecility;

''X. A subsisting marriage with a person other than the person whom it is desired to marry.''

birth places of the contracting parties. Such a construction would lead to an absurd result and is not required by the text or context of Article 235. We conclude that "impediments" render a marriage void *ab initio*, but contravention of the provisions in subsection III renders a marriage merely voidable.

Darin makes no argument that any of the "impediments" listed in Article 156 existed when Werden and Linda married in Mexico. As the trial court recognized here, the Mexican marriage of Werden and Linda was, at most, voidable, not void. Werden's death terminated the marriage, *Dribble v. Meyer, supra*, 203 Or at 547, and Darin cannot collaterally attack its validity in this probate proceeding. The trial court did not err in denying the petition to set aside Werden's 1983 will.

Affirmed.