Argued and submitted May 10, affirmed November 3, 1999

## Cynthia S. WELLER,
*Appellant,*

*v.*

## Ty S. WELLER,
*Respondent.*

## (9703-63450; CA A99660)

988 P2d 921

Robert T. Scherzer argued the cause and filed the briefs for appellant.

David N. Hobson, Jr. argued the cause for respondent. With him on the brief was Hobson, Hobson & Angell.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

In this proceeding, which follows earlier domestic relations proceedings between the same parties, plaintiff (wife) appeals from a judgment in which the trial court determined that it did not have personal jurisdiction over defendant (husband), but in which the court nevertheless awarded to wife the parties' personal property located in Oregon. Wife contends that the trial court erred in concluding that it lacked personal jurisdiction over husband and in failing to make an award to her based on husband's enhanced earning capacity. Husband cross-assigns error to the trial court's denial of his motion to dismiss wife's complaint for lack of subject matter jurisdiction and for failure to state ultimate facts sufficient to constitute a claim, and his motion to strike as a sham pleading wife's request for a judgment based on his enhanced earning capacity. Because we agree that the trial court did not have subject matter jurisdiction to make an award based on husband's enhanced earning capacity, we need not decide whether the trial court was correct when it ruled that it lacked personal jurisdiction over husband. We affirm the award of personal property to wife because the court had *in rem* jurisdiction to make that award.

The parties appear to agree on most of the pertinent facts. We need not describe those facts in detail because much of the factual showing made below dealt with the issue of personal jurisdiction and because, as we explain later, we do not reach that issue. The parties went to high school together in Oregon, and they were married here in 1986. Husband then received his undergraduate degree and went to medical school in Oregon. Wife worked as a receptionist while husband was in medical school. After graduating from medical school, husband first interned at a Portland hospital. The parties then left Oregon so that husband could complete his residency in New Hampshire and undertake a fellowship in Australia. The parties returned to the United States in early 1996. Apparently, the marriage had become strained while the parties were in Australia and, after they returned, husband went to Idaho, where he now lives and practices medicine.

Husband has not lived in Oregon since 1991. After moving from Oregon, however, husband retained some ties to this state. He renewed his Oregon driver's license while living in New Hampshire and again before going to Australia, using wife's parents' address as his on the renewals. After moving to Idaho, he obtained two vehicle loans through an Oregon credit union, where he kept an open account that he used to pay bills while in Australia. He also remained registered to vote in Oregon while he was away, although he asserts that he has not in fact voted in Oregon since 1991 and that he also registered to vote elsewhere, first in New Hampshire and later in Idaho, after moving to those states. Apart from a three-day visit to the state after husband finished his residency, wife never has been in Idaho.

About seven weeks after moving to Idaho, husband filed a dissolution proceeding in that state, which has a six-week residency requirement for such actions. Idaho Code § 32-701. In that proceeding, wife questioned whether the Idaho court had jurisdiction over her, but she agreed that the court could dissolve the parties' marriage. After the Idaho court entered its order dissolving the marriage, the court entered a further order, concluding in part that the Idaho court did not have personal jurisdiction over wife. The Idaho court also determined that it had no "*in rem* jurisdiction" over husband's enhanced earning capacity because enhanced earning capacity "is not property within the State of Idaho[.]" Finally, the Idaho court "declined" to exercise jurisdiction over the parties' personal property because relatively little of that property was in Idaho, because "[s]ignificant items of personal property acquired during the marriage of the parties are located" in Oregon, and because, in the Idaho court's view, exercising its jurisdiction "would result in a piecemeal adjudication of the property rights of the parties."

After husband filed the dissolution proceeding in Idaho, but before the Idaho court entered its decree, wife filed what she termed a "COMPLAINT [DIVISION OF MARITAL ASSETS]" in this state. (Brackets in original.) In that proceeding, wife sought spousal support, an equitable property division, and an award of her attorney fees. Husband moved to dismiss that case on the ground, *inter alia,* that "there [was] another action pending between the same parties for

the same cause," ORCP 21 A(3)—specifically, the Idaho dissolution proceeding. At the hearing held on husband's motion to dismiss, wife's attorney told the trial court, after being pressed by it to identify some injury to her interests that might result from a dismissal, that wife would not be harmed if the court granted the motion to dismiss, without prejudice, based on the then-pending Idaho dissolution proceeding. Consequently, in December 1996, the trial court dismissed the Oregon case "without prejudice" because of the pending Idaho case. The judgment stated that wife could "refile an action in [this state] when a determination is made by the Idaho Courts as to the scope of the relief granted in the [then]-pending proceedings in Idaho[.]" Wife did not appeal from that judgment of dismissal.

Instead, some five-and-one-half months after the Idaho court granted the decree of dissolution and two-and-one-half months after the Idaho court entered its findings, conclusions, and order, wife filed the complaint that is the subject of this appeal. In this second Oregon case, wife sought spousal support, an equitable property division (including an award based on husband's enhanced earning capacity), and an award of her attorney fees. Husband again moved to dismiss. He asserted that the court lacked personal jurisdiction over him, that it lacked subject matter jurisdiction, and that wife had failed to plead ultimate facts sufficient to state a claim. ORCP 21 A(1), (2), (8).[1] He also moved to strike as a "sham" pleading wife's request for an award based on his enhanced earning capacity. ORCP 21 E.[2] The general theme of husband's motions, apart from his motion to dismiss based on lack of personal jurisdiction, was that, after the parties' marriage was dissolved in Idaho, the Oregon court had no authority to award spousal support, to divide the parties' property, or to make an award based on enhanced earning capacity.

After the parties submitted affidavits and other materials, the trial court ruled on husband's motions to dismiss and to strike. The court granted husband's motion to

---

[1] As pertinent here, ORCP 21 A provides that a party may move to dismiss based on "(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person," and "(8) failure to state ultimate facts sufficient to state a claim[.]"

[2] ORCP 21 E provides that a party may move to strike "any sham, frivolous, or irrelevant pleading or defense * * *."

dismiss based on lack of personal jurisdiction, but denied his motion to dismiss based on lack of subject matter jurisdiction and failure to plead ultimate facts sufficient to constitute a claim. The court "decline[d] to rule" on husband's motion to strike because "the Court's dismissal of the case for lack of personal jurisdiction [was] dispositive." Later, the court entered a judgment, incorporating its earlier rulings on husband's motions and ordering that the remaining personal property of the parties in the State of Oregon be awarded to wife. In an earlier letter opinion, the trial court explained that, if it found personal jurisdiction over husband, then wife could "go forward with her cause of action regarding property located in Oregon, including [husband's] enhanced earnings," but that, if the court found that it lacked personal jurisdiction over husband, then wife could "go forward on the disposition of property located" in Oregon, "excluding [husband's] enhanced earnings." The trial court also concluded that wife could "not go forward on the issue of spousal support" because that "issue had been foreclosed by the dissolution proceeding in Idaho."

■     On appeal, wife first assigns error to the trial court's determination that it lacked personal jurisdiction over husband.[3] We conclude, however, that we do not need to determine if that trial court ruling was wrong. Regardless of whether the trial court had personal jurisdiction over husband, its disposition of the case was proper because it lacked subject matter jurisdiction to make an award based on husband's enhanced earning capacity.[4]

The essence of husband's challenge to the court's subject matter jurisdiction is that the court's authority over the requested relief derives solely from the dissolution statutes and that, once the parties were no longer married, that

---

[3] Wife also claims that the trial court erroneously determined that enhanced earning capacity cannot be property in this state, but in fact the trial judge made no such ruling. Instead, as noted above, the court ruled that enhanced earning can be property, *see* ORS 107.105(1)(f) (providing that "the future enhanced earning capacity of either party may be considered as property"), and that wife could pursue her claim for an award based on husband's enhanced earning capacity *if* the court found that it had personal jurisdiction over husband.

[4] On appeal, wife does not complain about the trial court's decision not to award spousal support.

source of authority no longer applied. It follows, husband contends, that once the Idaho dissolution proceedings were concluded, the Oregon court could not exercise jurisdiction to divide the parties' property or to base an award on his enhanced earning capacity. With respect to enhanced earning capacity, we agree. We conclude, however, as did the trial court, that the trial court had *in rem* jurisdiction to divide and award the parties' personal property remaining in Oregon.

In urging that the trial court lacked subject matter jurisdiction, husband relies on the Supreme Court's decision in *Rodda v. Rodda*, 185 Or 140, 200 P2d 616, 202 P2d 638, *cert den* 337 US 946 (1949). In that case, the wife had obtained an Oregon decree of separate maintenance that required the husband to pay monthly support. The husband thereafter moved to Nevada and obtained a divorce in that state. The Nevada court did not acquire personal jurisdiction over the wife, and she did not seek a divorce in Oregon. After the Nevada divorce, the husband moved to vacate the decree of separate maintenance on the ground that the divorce had wiped it out. The Supreme Court affirmed the trial court's order vacating the decree. It held that, because the separate maintenance statutes applied to "married persons," the decree for separate maintenance lost its effectiveness when the Nevada decree ended the marriage. *Rodda*, 185 Or at 147-50. In discussing that conclusion, the court said:

> "There are two sources of power in this state for the award of alimony, and only two so far as the prior decisions of this court go. One is the statute which authorizes an allowance of alimony to the party not in fault in a divorce suit * * *; the other is the separate maintenance statute. The first is alimony after divorce, *but the award may be made only when the court grants a decree of annulment or dissolution of the marriage.* * * * The second is alimony termed maintenance during the continuance of the marriage relation. And separate maintenance proceedings being special and statutory, the court has only such powers as the legislature has granted it."

185 Or at 152-53 (emphasis added; citations and internal quotation marks omitted). *See also Morphet v. Morphet,* 263

Or 311, 324, 502 P2d 255 (1972) (" 'the power to award support grows out of the marital relation,' " quoting *Rodda*); *Brown v. Brown*, 249 Or 274, 437 P2d 845 (1968) (applying *Rodda* to child support obligation).

■       The statutes in effect when *Rodda* was decided were Or Laws 1941, ch 408, § 7 (separate maintenance), and OCLA § 9-914 (divorce). The first granted power "[w]henever the court shall grant a decree of separation from bed and board, * * * further to decree as follows * * *." The second granted the court power "[w]henever a marriage shall be declared void or dissolved * * * to further decree as follows * * *." In that regard, the dissolution statutes are essentially unchanged. ORS 107.105 allows a court to determine child custody and to award child and spousal support "[w]henever the court grants a [judgment] of marital annulment, dissolution or separation." Similarly, ORS 107.115(1) expressly declares that a judgment of annulment or dissolution "shall give the court jurisdiction to award, to be effective immediately, the relief provided by ORS 107.105." Thus, the current statutes compel the same conclusion that the Supreme Court reached in *Rodda* under earlier dissolution statutes: the legislature has expressly conditioned a circuit court's subject matter jurisdiction over support and child custody on its primary power to grant a dissolution, annulment, or legal separation.

In *Anderson and Anderson*, 102 Or App 169, 171, 793 P2d 1378 (1990), we recognized that the usual rule does not apply "when another state awards a valid status-only dissolution *during the pendency of an Oregon dissolution case*[.]" (Emphasis added.) In that case, after the husband filed a dissolution proceeding in California and before that case was resolved, the wife filed in Oregon. The Oregon proceeding was pending when California dissolved the parties' marriage. This court held that Oregon was required to give full faith and credit to the California decree, but that "it [was] not inconsistent with that clause for an Oregon court with personal jurisdiction over the parties to decide the property and child support issues that the California court could not" due to that court's lack of personal jurisdiction over the wife. *Anderson*, 102 Or App at 172. In discussing and distinguishing *Rodda*, this court stressed that:

"the Oregon court acquired jurisdiction over the parties' status before the marriage was dissolved. As a result, when it was registered here [by the husband], the California judgment became an Oregon judgment. The judgment gave the Oregon court 'jurisdiction to award * * * the relief provided by ORS 107.105.' ORS 107.115. ORS 107.105(1) grants the court power whenever *it* grants a judgment of dissolution. ORS 107.115, on the other hand, states the effect of a judgment of dissolution in more general terms and provides that such *a judgment* gives the court power to award the relief provided in ORS 107.105. It thereby gives the court authority to grant that additional relief *in a pending case* whenever the marriage is dissolved, even if a court of a different state grants the dissolution. ORS 107.115, therefore, expands the circumstances in which the court may grant the relief that ORS 107.105 provides. The *Rodda* court had no reason to consider the effect of a concurrent Oregon case on the trial court's jurisdiction, and its holding, therefore, does not control in these circumstances. Because the California court was without jurisdiction to decide the non-status issues, no rules of *res judicata* or collateral estoppel limit the Oregon court's authority over those matters. The trial court had jurisdiction to grant any supplemental relief that is available under ORS 107.105."

*Id.* at 173-74 (emphasis and omissions in original). In *Mackie and Mackie*, 113 Or App 273, 276, 832 P2d 1240 (1992), we described the holding in *Anderson* as follows: "We held that, when a foreign decree is rendered during the pendency of a dissolution proceeding in Oregon, registration of that foreign decree confers jurisdiction on the Oregon court to award the additional forms of relief listed in ORS 107.105."

■ Thus, *Anderson* and *Mackie* recognize an exception to the rule expressed in *Rodda* and similar cases. As a general rule, the authority to award support is solely statutory and depends on the trial court's jurisdiction over the parties' marital relationship. If, however, an Oregon proceeding seeking such relief is *pending* when another state dissolves the marriage—thus ending the marital relationship—then the Oregon court nevertheless retains its authority to grant relief ancillary to the dissolution judgment if the foreign judgment is registered in Oregon.[5]

---

[5] Although the prior cases all have involved spousal or child support, the same principles logically apply to a property award based on enhanced earning capacity.

The exception recognized in *Anderson* and *Mackie* does not apply here, and thus the trial court correctly declined to make an award to wife based on husband's enhanced earning capacity, even though the trial court did so based on a different rationale (*i.e.*, that it lacked personal jurisdiction over husband). The first Oregon proceeding that wife filed was pending when the Idaho court dissolved the parties' marriage and when that court subsequently entered its findings of fact, conclusions of law, and order. Had that first Oregon proceeding continued and had wife registered the Idaho judgment in Oregon, the Oregon court might have had authority to fashion a property division that included consideration of husband's enhanced earning capacity, assuming that wife provided the necessary proof.[6] *See Denton,* 326 Or at 240-45 (describing and applying the requisite standard of proof); *Mackie,* 113 Or App at 276 ("when a foreign divorce decree is rendered during the pendency of a dissolution proceeding in Oregon, registration of that foreign decree confers jurisdiction on the Oregon court to award the additional forms of relief listed in ORS 107.105").

That first Oregon proceeding was dismissed, however, after wife's attorney advised the trial court that wife would not be harmed if the dismissal were without prejudice. Wife did not appeal from the dismissal. By the time wife filed this second Oregon proceeding, the Idaho dissolution proceedings had concluded and had become final. *See* IAR 14(a)

---

*See* ORS 107.105(1)(f) (providing that "[t]he present value of, and income resulting from, the future enhanced earning capacity of either party may be considered as property" in a dissolution proceeding); *Denton and Denton,* 145 Or App 381, 387, 930 P2d 239 (1996), *rev'd on other grounds* 326 Or 236, 951 P2d 693 (1998) (before enactment of statutory provision stating that enhanced earning capacity can be property, "Oregon courts * * * expressed reluctance to recognize enhanced earning capacity as property to be divided upon dissolution").

[6] The uncertainty expressed in the preceding sentence ("the Oregon court might have had authority") results from the rather uncertain nature of the first proceeding filed by wife. As noted, wife called the pleading she filed in that case a "COMPLAINT [DIVISION OF MARITAL ASSETS]." (Brackets in original.) *Compare* ORS 107.085(1) ("A suit for marital annulment, dissolution or separation shall be entitled: 'IN THE MATTER OF THE MARRIAGE OF (names of parties): PETITION FOR (ultimate relief sought)).'" Wife's "complaint" also did not include all the information that is required to be set out in a "petition" for dissolution of marriage. ORS 107.085(2). Because we conclude that the *Anderson* exception does not apply here in any event, we need not decide whether the exception also would not have applied because wife filed a "complaint" seeking division of the marital assets, rather than a petition for dissolution.

(42-day deadline for filing appeal); IAR 21 (deadline is juris-dictional). Thus, no Oregon case was "pending" when the Idaho dissolution proceedings became final. For that reason, the trial court lacked authority to base an award on hus-band's enhanced earning capacity. Therefore, irrespective of whether the trial court was correct when it ruled that it had no personal jurisdiction over husband, the court did not err when it refused to fashion an award to wife based on hus-band's enhanced earning capacity.

■     The remaining issue is whether the trial court erred in denying husband's motion to dismiss and in awarding to wife the parties' personal property found in this state. We conclude that the trial court did not err because it had *in rem* jurisdiction to make such an award. ORCP 5 A provides that a court's jurisdiction *in rem* "may be invoked":

> "When the subject of the action is real or personal prop-erty in this state and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding the defendant from any interest or lien therein. * * *."

By its express terms, that provision applies here, and ORCP 5 A thus gave the trial court authority to divide, and to award to wife, the parties' personal property found in this state. *See also Hobgood v. Sylvester,* 242 Or 162, 165, 408 P2d 925 (1965) ("The underlying theory of [*in rem*] jurisdiction does not contemplate a typical personal judgment against a defen-dant, but only a judgment to the extent of the defendant's property within the state.").

■■     As we have explained, the authority to make an award based on enhanced earning capacity depends on the dissolution statutes and thus on the existence of a marital relationship. In contrast, a circuit court does possess author-ity to divide and award the parties' personal property located in Oregon. The circuit court's authority to do so does not depend on the parties' status as married persons. *See Beal and Beal,* 282 Or 115, 122, 577 P2d 507 (1978) (court has authority to divide property of unmarried couple based upon their express or implied intent); *Wharton and Wharton,* 55 Or App 564, 566 n 1, 639 P2d 652 (1982) (court has authority under "general equity principles" to divide property); ORS

108.080 (providing for action to recover property held by other spouse "in the same manner and to the same extent as if they were unmarried"). *See also* Robert C. Casad and William B. Richman, 2 *Jurisdiction in Civil Actions*, § 9-2[b] at 279 (3d ed 1998) (court has jurisdiction to divide property in state).[7]

On appeal, husband does not complain about the merits of the trial court's award of the parties' personal property to wife. It follows that, irrespective of whether the trial court had personal jurisdiction over husband, it did not err in awarding that property to wife.

Affirmed.

---

[7] Although neither party mentions this point, in *Rescue Technology, Inc. v. Claw, Inc.,* 153 Or App 190, 194, 956 P2d 1010 (1998), we said that "since *Shaffer v. Heitner*, 433 US 186, 97 S Ct 2569, 53 L Ed 2d 683 (1977), the United States Supreme Court has made the exercise of *in rem* jurisdiction subject to the minimum contacts test of *International Shoe Co. v. Washington*, 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), that previously applied solely to *in personam* jurisdiction." That statement should not be misunderstood. In both true *in rem* and *quasi in rem* proceedings, as opposed to cases involving a court's so-called "attachment" jurisdiction, the exercise of jurisdiction requires a sufficient relationship between the property and the locale, not between a person and the location. *See Restatement (Second) of Judgments*, § 6 (1982) ("A state may exercise jurisdiction to determine interests in a thing *if the relationship of the thing to the state* is such that the exercise of jurisdiction is reasonable.") (emphasis added). "The connection classically sufficient to found jurisdiction to determine interests in a thing is the presence of the thing within the state." *See id.* comment e at 77.