Argued January 3, reversed with directions January 26, petition
for rehearing denied March 15, 1966

IN THE MATTER OF THE ESTATE OF
# T. A. HILDENBRAND, DECEASED
# WALKER *v.* HILDENBRAND
410 P. 2d 244

*Charles D. Dolph,* Portland, argued the cause for appellant. With him on the brief was Ernest J. Burrows, Portland.

*L. B. Sandblast,* Portland, argued the cause and filed the brief for respondent.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

HOLMAN, J.

The petitioner is the daughter of T. A. Hildenbrand, deceased. She instituted this proceeding to remove Vivian E. Hildenbrand as administratrix of her father's estate and to have herself or the Oregon Bank appointed to represent the estate. Vivian Hildenbrand had been appointed administratrix as the widow of decedent. The sole question is whether Vivian Hildenbrand was in fact the widow of decedent and thus entitled to letters of administration.

The facts are comparatively simple and free from dispute. Vivian Hildenbrand and T. A. Hildenbrand commenced living together in Oregon in 1955 and lived continuously together in Oregon and Washington until his death in 1964. During this time, pursuant to mutual agreement, they cohabited and held themselves out as husband and wife. They purchased real property in their joint names as husband and wife. They never went through a marriage ceremony. On four different occasions they went on vacation fishing trips to a resort in Idaho where they registered as husband and wife, held themselves out as such, and lived together during their stay. Two trips in 1957 were of three days duration each. Two trips were of seven days duration each, one in 1958 and one in 1959.

Neither Washington nor Oregon recognizes common-law marriages. Idaho does. The relevant Idaho statutes are as follows:

> "Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by solemnization, or by a mutual assumption of marital rights, duties or obligations." Idaho Code § 32-201 (1948).

> "Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." § 32-203.

> "Marriage must be solemnized, authenticated and recorded as provided in this chapter, but non-compliance with its provisions does not invalidate any lawful marriage." § 32-301.

■ A relationship recognized as a marriage in another state where it was consummated will be recognized in Oregon even though such relationship would not be a marriage if the same facts had been relied upon to create a marriage in Oregon, *Boykin v. State Indus. Acc. Comm'n,* 224 Or 76, 355 P2d 724 (1960); *Kelley v. Kelley,* 210 Or 226, 230, 310 P2d 328 (1957); *Sturgis v. Sturgis,* 51 Or 10, 16, 93 P 696, 131 Am St Rep 724, 15 LRA (NS) 1034 (1908).

The inquiry here is whether the casual vacation trips into Idaho constituted a marriage under the Idaho law. There appear to be no Idaho cases which discuss the necessity that the parties be residents of the state. In the case of *In re Koshman's Estate,* 77 Idaho 96, 288 P2d 652 (1955), the man resided in the state of Washington and made visits of four days each month to Idaho where he had some business interests. During his Idaho trips he resided with a woman who

subsequently claimed to be his common-law wife. The evidence was conflicting as to their intent. The court there said: "It is quite clear from the evidence that deceased had established his legal residence at Richland, Washington." 77 Idaho at 102. However, the case does not appear to be decided on that basis.

In the case of *In re Foster,* 77 Idaho 26, 287 P2d 282 (1955), the parties were residents of Idaho and traveled to Washington where they agreed to be married. Thereafter they returned to Idaho where they resided as husband and wife. The court said:

"* * * But assuming the marriage was consented to and consummated in the state of Washington, consent is a continuing thing, and it follows that the parties also consented to and consummated the marriage in Idaho upon their return. * * *" 77 Idaho at 32.

We do not feel this statement is controlling. In this case, as in all other Idaho cases where a common-law marriage was found, the parties resided in the state.

Several non-Idaho cases have held that a temporary sojourn in a common-law marriage state does not give rise to a common-law marriage. In *State ex rel. Smith v. Superior Court,* 23 Wash 2d 357, 161 P2d 188 (1945), the couple resided and cohabited as husband and wife for a period of six years in Oregon. During this time they took a pleasure trip to Idaho of four days and three nights duration and held themselves out as husband and wife. In deciding there was no common-law marriage, the court said:

"Parties who live for years in illicit relationship in a state in which they were domiciled will not find themselves married to each other if they happen to sojourn for a short time and hold themselves out as man and wife in a state where com-

mon-law marriage is recognized." 23 Wash 2d at 366.

In *Taegen v. Taegen,* 61 NYS2d 869 (Sup Ct 1946) aff'd 272 App Div 871, 72 NYS2d 402 (1947), the couple went through a marriage ceremony in Maryland that was invalid because one of them was already married. They thereafter resided in New York as husband and wife for a period of about eight years. During this period, and after the disability of the married party was removed, they made three trips to New Jersey, a common-law marriage state. Each trip was of three or four days duration during which they acted as husband and wife. The court held there was no common-law marriage, saying, at page 873:

"* * * There is not a scintilla of evidence that on any of those visits to New Jersey, or at any other time or place other than as a part of the Maryland ceremony, Mary and Walter ever said to each other, in words or substance, that they thereby agreed to or did take each other as husband and wife; and that there was such a statement between them is rendered highly improbable by the fact that, wickedly or stupidly or too confidingly, each assumed that the Maryland ceremony constituted a valid marriage and no question as to the validity of such marriage ever was raised in their minds until discussions with lawyers took place in 1944, shortly before Mary brought her action for divorce."

In *Binger v. Binger,* 158 Neb 444, 63 NW2d 784 (1954), the parties, while residents of Nebraska, participated in a marriage ceremony in Missouri. At the time one of them was married. They returned to Nebraska and lived together as husband and wife for nine years. After the marriage disability had been removed the parties took three pleasure trips to Colo-

rado, a common-law marriage state. Each trip was of three or four days duration during which they held themselves out as husband and wife. The court decided there was no common-law marriage, stating at page 452 of the opinion as follows:

"Plaintiff relies upon the above [Colorado] cases, but they are all distinguishable. The parties therein all lived in and were bona fide residents of Colorado where as such they, in good faith, intending to be married, continuously cohabited, and held themselves out as husband and wife in that state for long periods of time. Here the parties, who were at all times bona fide residents of this state where common-law marriage is invalid, simply took short pleasure trips across the state line without ever intending to contract or contracting a common-law marriage in Colorado as required by its laws."

For other cases resulting in similar holdings, see *Kelly v. Consol. Underwriters,* 300 SW 981 (Tex Civ App 1927) aff'd 15 SW2d 229 (App Comm'n 1929); *Marek v. Flemming,* 192 F Supp 528 (SD Tex 1961), vacated and remanded 295 F2d 691 (5th Cir 1961); *Blodgett v. Blodgett,* 109 Wash 597, 187 P 340 (1920); *Norcross v. Norcross,* 155 Mass 425, 29 NE 506 (1892); *Cruickshank v. Cruickshank,* 193 Misc 366, 82 NYS2d 522 (Sup Ct 1948).

Generally, the cases rest on the proposition that the parties either were not residents or had not intended to create a common-law marriage in the state temporarily visited. Common sense would indicate that something as serious and vital to the welfare of society as a determination of the marriage relation should not rest on something as insubstantial as a holiday visit to a common-law marriage state with a person of the

opposite sex during which the participants held themselves out as husband and wife. This is particularly so where there is no evidence that the parties were aware that any change in their marital status would result or that the visit was made for the purpose of consummating a marriage. Were the law otherwise, marriage might be an even more common event than is generally supposed. It can be argued that the law should be otherwise where the parties, both previously and subsequently, lived elsewhere in what purported to be the marriage relation. However, we do not believe a determining factor should be a temporary visit for holiday purposes to a common-law marriage state. For a contrary holding see *Estate of McKanna,* 106 Cal App 2d 126, 234 P2d 673 (1951). The case of *Boltz v. Boltz,* 325 Mass 726, 92 NE2d 365 (1950), is also sometimes cited as a contrary holding but it should be distinguished on the ground that there was actual residence of short duration in the common-law marriage state.

This is not inconsistent with the holding in *Boykin v. State Indus. Acc. Comm'n,* supra. In *Boykin* the parties resided from three to five months in Idaho where they earned income and filed income tax returns on which the woman was named as the taxpayer's wife.

■ It is our opinion that the Idaho courts would hold that no common-law marriage was consummated. Therefore, the administratrix is not the widow of decedent. The decree of the trial court is reversed with directions to remove Vivian E. Hildenbrand as administratrix of the estate of T. A. Hildenbrand and to appoint petitioner or some qualified person or institution as the representative of said estate.