Argued October 25, affirmed December 20, 1976

In the Matter of the Estate
of James E. Booker, Deceased,
BOOKER, *Appellant,*
*v.*
BOOKER, *Respondent.*
(No. 122422, CA 5817)

557 P2d 248

*Jan Thomas Baisch,* Portland, argued the cause for

appellant. With him on the briefs was Pozzi, Wilson & Atchison, Portland.

*Richard O. Nesting,* Portland, argued the cause for respondent. With him on the brief was Buss, Leichner & Barker, Portland.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

## LEE, J.

James E. Booker died intestate while residing in Multnomah County on February 26, 1975. On March 6, 1975 respondent, Rosie L. Booker, filed with the circuit court a "petition for appointment of personal representative and letters of administration" (ORS 113.025) in which she was described as the decedent's "surviving spouse." Based on that petition the court ordered the decedent's estate admitted to administration and appointed respondent as personal representative.[1]

Subsequent to the publishing of a "notice to interested persons" (ORS 113.155), petitioner, Ida Mae Booker, filed a petition with the court seeking the removal of respondent as personal representative and her own appointment to that position. In substance petitioner alleged that as the result of a "common law marriage" entered into by decedent and herself while domiciled in Texas in 1951, the subsequent marriage of decedent and respondent was "void"[2] and that, therefore, she, rather than respondent, was the "surviving spouse" into whose hands the responsibility for the administration of the estate should have been placed.

Following a hearing at which the parties appeared with counsel to present evidence in support of their respective claims, the court below denied the petition

---

[1] ORS 113.085 provides in relevant part that upon the filing of an appropriate petition the probate court shall appoint

"* * * a qualified person it finds suitable as personal representative, giving preference * * *

"* * * * *

"(b) [t]o the surviving spouse of the decedent * * *.

"* * * * *." ORS 113.085(1).

[2] Tex Fam Code Ann, tit 1, § 2.22 (Vernon 1975) provides in relevant part that "[a] marriage is void if either party was previously married and the prior marriage is not dissolved. * * *" The Oregon legislature has provided in similar fashion that any marriage entered into by a party having a wife or husband living at the time is void—ORS 106.020.

[ 781 ]

for removal of respondent as personal representative. We review de novo upon the record.[3]

■ A presumption of validity attaches to an existing marriage.[4] Where, however, it is charged that an individual has neglected to take advantage of dissolution or annulment procedures prior to entering into a second marriage the question arises as to whether this presumption ought to attach to the first or second relationship. The generally accepted view is that in such a case any potential conflict is to be avoided by reliance upon the additional presumption that the first marriage was, in fact, terminated prior to the consummation of the second.[5]

Thus, in *Smith v. Smith,* 169 Or 650, 131 P2d 447 (1942) where the defendant's claim to real property owned by her deceased husband was challenged on the ground that her marriage to the deceased was void by the reason of the fact that at the time it was entered into she was already lawfully married, the court specifically held that:

"Plaintiffs, in challenging the validity of * * * [the second marriage], have the burden of proof. There is a strong presumption that such marriage is valid. Indeed, it is one of the strongest disputable presumptions known in law. Defendant having shown a ceremonial marriage

_____

[3] ORS 19.125(3); 111.085; 111.105(1); State v. Nesbitt, 23 Or App 202, 541 P2d 1055 (1975), Sup Ct *review denied* (1976).

[4] ORS 41.360 states in part:

"All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:

"* * * * *

"(30) A man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage.

"* * * * *."

*See also,* Ashford v. Ashford, 201 Or 206, 249 P2d 968, 268 P2d 382 (1954); Franklin v. Biggs, 14 Or App 450, 513 P2d 1216, Sup Ct *review denied* (1973).

[5] *See* Annotation, Presumption as to validity of second marriage, 14 ALR2d 7 (1950).

consummated in form of the law, it was incumbent upon plaintiffs to establish by clear and convincing evidence: (1) A prior marriage by competent parties; (2) that such marriage has never been dissolved or annulled; and (3) that defendant's former spouse was alive at the time of the subsequent marriage * * *

"* * * It is presumed in law that the prior marriage had been dissolved by divorce or death before the subsequent marriage took place. Plaintiffs have not shown that the prior marriage was not dissolved or annulled by legal proceedings. * * *"[6] 169 Or at 652.

■■ A relationship recognized as a marriage in another state in which it occurred will be recognized as valid by the courts of this state.[7] Under Texas law a valid "common law" marriage is established when a man and woman enter into an agreement, expressed or implied, to become husband and wife, and thereafter live together pursuant to the agreement while holding themselves out to the public as a married couple.[8]

■ Respondent's own testimony, apparently found to be credible by the court below which had an opportun-

_____

[6]The same presumption in favor of a second marriage has been adopted by the courts of Texas: *See,* Hudspeth v. Hudspeth, 206 SW2d 863 (Tex Civ App 1948); Simpson v. Simpson, 380 SW2d 855 (Tex Civ App 1964); Schacht v. Schacht, 435 SW2d 197 (Tex Civ App 1968).

[7]Boykin v. State Industrial Accident Commission, 224 Or 76, 355 P2d 724 (1960); Walker v. Hildenbrand, 243 Or 117, 410 P2d 244 (1966); Bridgman v. Stout, 5 Or App 558, 485 P2d 1101 (1971).

[8]Tex Fam Code Ann tit 1, § 1.91 (Vernon 1975) provides in relevant part that:

"* * * * *

"(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

"* * * * *

"(2) they agreed to be married, and after the agreement they lived together in * * * [the state of Texas] as husband and wife and there represented to others that they were married.

"(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married."

*See,* Gary v. Gary, 490 SW2d 929 (Tex Civ App 1973); Ex parte Threet, 160 Tex 482, 333 SW2d 361 (1960).

ity to observe her demeanor as a witness, indicated that in October 1973, while residing in the state of Texas, she and the decedent entered into the requisite agreement to become husband and wife; additional evidence introduced by her served to demonstrate that she and the decedent had lived openly together as man and wife continuously thereafter until Mr. Booker's untimely death.[9] Taken as a whole, this evidence is sufficient to establish the existence of a marriage recognized as valid under Texas law. Faced with this showing of a "subsequent" lawful marriage, petitioner has the burden of proving by "clear and convincing evidence" *both* the existence of a prior marriage between herself and decedent *and* the nonexistence of a decree dissolving that marriage prior to October 1973.

Petitioner did, in fact, introduce evidence tending to show that in September 1951 she and decedent agreed to enter into a marital relationship; witnesses on her behalf also testified that for many years thereafter petitioner and decedent lived together as a married couple. This evidence might very well be adequate to establish the existence of a "marriage" recognized as valid in Texas.

With respect to the crucial question of whether any preexisting marriage had or had not been dissolved before October 1973, however, the only competent evidence produced by petitioner was her own testimony to the effect that she had never initiated any divorce or dissolution suit and that she had never been

[9]Exhibits introduced by respondent indicate that on October 2, 1973 she and decedent applied for and received a marriage license from the Director of the Department of Judicial Services of Multnomah County; later that month respondent and decedent moved to Dallas, Texas where, by respondent's own testimony, the marriage was solemnized in an appropriate ceremony.

Additional evidence shows that between October 1973 and decedent's death he listed respondent as his wife on wage and tax statements, withholding certificates, and union cards; during that interval respondent and decedent also maintained joint savings accounts, registered their automobile jointly, and entered into a contract to purchase real property as man and wife.

notified of the commencement of any such suit by Mr. Booker. Standing alone, that testimony does not provide the clear and convincing evidence required to overcome the presumption that her own marriage had, in fact, been dissolved prior to the time respondent and decedent were themselves married.

Affirmed.

**FORT, J.,** specially concurring.

The majority here appears to conclude from the evidence that the decedent entered into a valid common law marriage with Ida Mae Booker, appellant herein, in the state of Texas in 1951, that the marriage was consummated, and that she and James E. Booker, the decedent, lived continuously together thereafter, except for his periods of penal confinement, as husband and wife, until 1973. In October 1973, the trial court found and this court concludes, that James E. Booker and Rosie L. Taylor obtained a marriage license in Oregon, that no marriage was ever solemnized or attempted in Oregon, but that in October 1973, sometime after he and Rosie had journeyed to Texas, and, as the majority states, "while residing in the state of Texas, she and the decedent entered into the requisite agreement to become husband and wife." Thereafter James and Rosie lived as man and wife until his death. It is conceded that both the first and second wife are now alive.

ORS 41.360(2) provides that in Oregon it is a disputable presumption that

> "[a] thing once proved to exist continues as long as is usual with things of that nature."

In *State v. Eggleston,* 45 Or 346, 77 P 738 (1904), a prosecution for adultery, the court, after concluding that there was evidence the defendant was validly married to another, said:

> "* * * 'In the absence of affirmative evidence, the dissolution of the marriage is not to be presumed to have occurred, either by divorce or by the death of one of the

parties to it.' It is a disputable presumption that a thing once proved to exist continues as long as it is usual with things of that nature: B. & C. Comp. § 788, subd. 33. The solemnization of a marriage is based upon the mutual assent of the parties that the relation entered into shall continue until it is severed by the death of one of them. * * *" 45 Or at 356.

The majority relies on the more recent case of *Smith v. Smith,* 169 Or 650, 131 P2d 447 (1942). I concede that there is language in that opinion, standing alone, which supports the result it has reached. I believe, however, that there is a basis for distinguishing it from this case. I note initially that *Smith* nowhere refers to *Eggleston.* It is elementary that reversal of prior decisions by implication only is not favored.

*Smith* requires in a case such as this that three things must be proven: (1) the prior marriage, (2) the prior marriage has not been terminated, and (3) the prior spouse is still alive.

In the case at bar the majority as stated concludes that the prior marriage to Ida Mae Booker is established, that she is still alive, and indeed is the appellant here. In *Smith* the crucial issue, as gleaned from the court's brief opinion, was whether a prior spouse of the woman who had married the deceased owner of the realty involved in that suit was still living when she later married the man who owned the property in dispute.

In *Smith,* in addition to the language quoted by the majority and immediately prior to the last portion quoted, the court said:

"The proof falls far short of meeting the essential requirements to set aside and hold for naught a subsequent marriage. It is argued that defendant has failed to show that Quirino Apigo Tadina was dead at the time of her second marriage. The authorities above cited require plaintiffs to show that Tadina was alive at such time. *All the evidence, instead of showing that Tadina was alive,*

*tends to show that he was dead at such time. * * *"* (Emphasis supplied.) 169 Or at 652.

Thus in my view the decision appears to have turned entirely on the failure of the plaintiff to prove, in the face of "all the evidence" to the contrary, that the first husband of the surviving widow of the deceased owner of the realty was alive at the time she married the owner of the realty. Here, on the contrary, not only is there no evidence at all that the first wife is dead, but it is conceded that she is very much alive and is the appellant in this proceeding.

The reality of the majority's opinion is that the first wife is compelled to prove a negative and one that is virtually impossible to establish, namely, that James E. Booker did not somewhere at some time divorce her before his purported common law marriage to Rosie in 1973. There is absolutely no evidence that he did divorce Ida Mae. She testified that she had never been served with papers of any kind relating to divorce or separation, that Mr. Booker at all times knew her whereabouts and was in regular touch with her long after as well as before his marriage to Rosie.

It seems to me that once the position has been taken, as the majority has done here, that the marriage of Ida Mae and James E. Booker was a valid common law marriage, the burden of showing its lawful termination, as in *Eggleston,* should be on these facts on the person claiming that her subsequent marriage was valid because the first marriage of James E. Booker has been validly terminated.

Here, however, the trial court in a carefully considered opinion concluded that Ida Mae Booker had not established by a preponderance of the evidence that she and James E. Booker had in 1951 entered into a valid common law marriage in Texas, because it was unable to conclude that the requisite mutual intent to enter into a marriage contract existed between them. Accordingly it concluded that Ida Mae Booker had not established a valid common law marriage with James

E. Booker. It was for that reason primarily that it concluded there was no valid legal impediment to the marriage in 1973 of Rosie Taylor and James E. Booker.

Although the question is close, I would defer to the findings of the trial judge who saw and heard the witnesses, particularly when as here credibility is a major factor. For that reason I concur in the result.