Argued and submitted November 6, 1981, at Pendleton,
reversed and remanded with instructions January 25,
reconsideration denied March 11,
petition for review denied May 18, 1982 (293 Or 146)

In the Matter of the Marriage of

WHARTON,
*Respondent - Cross-Appellant,*
*and*
WHARTON,
*Appellant - Cross-Respondent.*

(No. 79-11-7711, CA A20285)

639 P2d 652

Roy Kilpatrick, Mt. Vernon, argued the cause for appellant - cross-respondent. With him on the briefs was Kilpatricks & Pope, Mt. Vernon.

William F. Schroeder, Vale, argued the cause and filed the briefs for respondent - cross-appellant.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this dissolution proceeding, the issue is whether the parties were married. The trial court found the parties had effected a common-law marriage in Idaho and entered a decree of dissolution which provided for a division of the parties' property. Appellant contends that the parties were not married. We agree and reverse.[1]

The facts are not disputed. The parties were married in Nevada in December, 1965, and made their home at Marvin's ranch in Oregon. Mary brought a divorce suit a few months later, and a decree of divorce was entered in January, 1967, to be effective in March of that year. A few days after the date the decree was entered, the parties reconciled and continued to live at Marvin's ranch. They considered themselves to be married, believing that their reconciliation prior to the March, 1967, effective date, annulled or cancelled the decree. For the next twelve years they lived and worked together on the ranch, raised Marvin's children by a former marriage and conducted themselves in all ways as if they were married. They made numerous trips to Idaho.

In 1979, the parties again had a falling out. They consulted an attorney for the purposes of filing a petition for dissolution and only then learned that the 1967 divorce had been final. In August, 1979, they executed a property settlement agreement drawn by Marvin's attorney, which gave Marvin a disproportionate share of the property, but to which Mary agreed nonetheless. In November, 1979, Mary sought advice from a different attorney regarding the property settlement, and this dissolution proceeding resulted.

Mary contends that she and Marvin have established a common-law marriage pursuant to Idaho law.

---

[1] The underlying issue in this case concerns equitable division of the parties' property. The trial court divided the property pursuant to statutory authority as in a dissolution proceeding. ORS 107.105. If the parties are not married, the court lacked this basis of jurisdiction to provide for a division of property. *Rodda v. Rodda*, 185 Or 140, 200 P2d 616, 202 P2d 638 (1948), *cert den* 337 US 946 (1949). Lack of jurisdiction under the dissolution statutes, however, does not imply lack of jurisdiction under general equity principles, and our holding in this case does not address the merits of the property division. *See, e.g., Beal v. Beal*, 282 Or 115, 577 P2d 507 (1978).

Oregon does not recognize common-law marriage, *Huard v. McTeigh,* 113 Or 279, 232 P 658, 39 ALR 528 (1925), but Idaho does, and "[a] relationship recognized as a marriage in another state where it was consummated will be recognized in Oregon even though such relationship would not be a marriage if the same facts had been relied upon to create a marriage in Oregon." *Walker v. Hildenbrand,* 243 Or 117, 119, 410 P2d 244 (1966); *Boykin v. Industrial Accident Com.,* 224 Or 76, 81-82, 355 P2d 724 (1960). The question is whether the parties established, through their connection with Idaho, a common-law marriage that would be recognized under Idaho law.

The Idaho statutes provide:

"Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties or obligations." Idaho Code, § 32-201.

"Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases." Idaho Code, § 32-203.

Mary contends that the Idaho statutes were satisfied by the parties' numerous contacts with Idaho. They went to Idaho for many social and business purposes. They purchased automobiles, clothing, tools, equipment and livestock for the ranch and household appliances and furnishings at many western Idaho locations during the course of their twelve-year relationship. They had numerous overnight visits with relatives in Idaho, sought medical services in Idaho and on one occasion leased pasture land in Idaho. At all times they conducted themselves as a married couple and were considered to be married by their relatives and by business and social contacts in both Idaho and Oregon. Mary stated, on direct examination:

"Q. Now, from 1967 until August of 1979, can you estimate for the Judge how many days and nights, and I mean, not just days but a day and a night together that you and Marvin would have spent in Idaho as husband and wife?

"A. From '67 to '79. Over a hundred, I would say. Over ten years, ten days a year we go down."

Mary argues that their numerous contacts with Idaho distinguish the cases holding that brief vacations in Idaho do not establish a common-law marriage. In *Walker v. Hildenbrand, supra,* the court held that a couple residing in Oregon and Washington for nine years were not married after four three-to-seven day fishing trips to Idaho over a three-year period. *State ex rel. Smith v. Superior Ct.,* 23 Wash 2d 357, 161 P2d 188 (1945), held that a couple residing in Oregon for six years were not married after a four day-three night pleasure trip to Idaho. In *In re Koshman's Estate,* 77 Idaho 96, 288 P2d 652 (1955), the court held that no marriage had been consummated in Idaho between decedent and the appellant who was seeking appointment as personal representative of the estate. The decedent was a resident of Washington who had made monthly trips to Idaho during his days off. While there, he cohabited with appellant, who was a resident of Idaho, provided her support and on occasion introduced her as his wife. The court held that these visits by a nonresident in Idaho were not sufficient to establish a common-law marriage.

The common thread of these cases is the nature of the sojourns in Idaho and the lack of any residency in the state. They all involved social or business visits of a temporary nature. Although courts have not specifically held that residence in Idaho is required, residency or lack of it is a factor to be considered. In *Boykin v. Industrial Accident Com., supra,* the court upheld the marriage of a couple who had lived together for four years in four different states before moving to Idaho and establishing a brief residency before moving to Oregon. The court found that the parties were residents of Idaho for five months and that that was sufficient to establish a common-law marriage.

In *Albina Engine and Machine Works v. O'Leary,* 328 F2d 877 (9th Cir), *cert den* 379 US 817 (1964), the issue was whether a man and woman had established a common-law marriage in Idaho which would entitle the purported wife to widow's benefits under a federal compensation act. The couple had lived together in Idaho before moving to Oregon in 1942. For the next fourteen years the couple made annual visits to relatives in Idaho. The decedent had been married to another woman, whom he divorced in 1945

after the couple had moved from Idaho. The rationale of the court was expressed in this language:

"There is no apparent reason why Idaho should object to a marriage of non-domiciliaries visiting in the state, so long as they comply with Idaho law, and Idaho Code § 32-201 (1947) draws no distinction between residents and nonresidents. Moreover, John and Hilda's connection with Idaho was not that of mere visitors. As we have noted, their relationship began there; they lived in Idaho as man and wife from 1938 to 1942; two of their three children were born in Idaho; and both John and Hilda had parents in Idaho whom they visited annually, as husband and wife, accompanied by their children." (Footnote omitted.) 328 F2d at 882.

As the quoted portion of the opinion indicates, the court found it significant that the couple's consensual relationship began in Idaho and that they resided there as husband and wife for four years. They were not simply visitors in Idaho. The court found there was a common-law marriage despite the fact that during the couple's major contacts with Idaho the man was not legally able to marry.

In this case, the parties' contacts with Idaho were that of mere visitors. Although there were a great number of trips by the parties to Idaho, each visit was a temporary sojourn for business or pleasure. The successive visits were no different, in the context of Idaho law, than the visits of the parties in *Walker v. Hildenbrand, supra, State ex rel. Smith v. Superior Ct., supra,* or *In re Koshman's Estate, supra.* We conclude that the parties' contacts with Idaho were insufficient to constitute the basis of a common law marriage under Idaho law.

Because the parties were not married, the court erred in setting aside the property settlement agreement and granting a decree of dissolution.

Reversed and remanded with instructions to vacate the decree and dismiss the petition. No costs to either party.