168                    November 14, 2024                    No. 812

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Estate of
Michael Jung Kuang, Deceased.

Grace Liqing KUANG,
*Appellant,*

*v.*

Tina KUANG,
*Respondent.*

Clackamas County Circuit Court
21PB09802; A178456

Cody M. Weston, Judge.

Argued and submitted October 15, 2024.

Andrew Newsom argued the cause for appellant. On the briefs was Terrance C. Hunt. Also on the reply brief was Terrance C. Hunt Attorney, PC.

Kimberly A. Quach argued the cause for respondent. Also on the brief was Quach Family Law, P.C.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

This probate proceeding concerns the estate of the decedent, Michael Kuang. Appellant, Michael's widow Grace, appeals from a limited judgment that removed her as the personal representative of Michael's estate and appointed respondent, Michael's daughter Tina, as the successor personal representative.[1] Grace raises four assignments of error on appeal, which, as described below, reduce on the merits to whether the trial court erred when it determined that her marriage to Michael was void because it was a bigamous marriage and, for that reason, erred when it removed her as personal representative. *See* ORS 106.020(1) (prohibiting marriages where "either party thereto had a spouse living at the time of the marriage"). Tina asserts that Grace and Michael's marriage was bigamous, because at the time they were married, Michael was already married to Tina's mother, Yan.

We conclude that the trial court erred when it determined that the marriage of Michael and Grace was void and that it therefore erred when it removed Grace as personal representative of Michael's estate. We reverse and remand.

## I. LEGAL BACKGROUND

As noted, the issue in this case, for purposes of our analysis of the merits, reduces to whether the trial court erred when it determined that the marriage of Grace and Michael was void because it was a bigamous marriage. On appeal, Tina contends that aspects of Grace's arguments on that point are not preserved. To place the trial court proceedings in their appropriate context, before describing the facts of this case, we provide a brief overview of the relevant law.

Regarding the validity of marriages, at least in the context of probate proceedings, a party "challenging the validity of a marriage *** has a heavy burden of proof." *Davis v. Davis*, 55 Or App 982, 986, 640 P2d 692 (*Davis I*), *adh'd to on recons*, 57 Or App 145, 643 P2d 1351 (1982)

---

[1] Because many of the individuals who played a role in the events underlying this dispute have the same surname, the parties have used first names throughout their briefing. To avoid confusion, we also use that convention.

(*Davis II*).[2] "In such cases the courts have invoked a strong presumption that marriages are valid." *Id.*

To overcome the "strong presumption" of the validity of a marriage on the ground that the marriage is bigamous, the party seeking to overcome the presumption must:

> "'allege and prove that the parties to the alleged former marriage were eligible to consummate the same, [3] and that the spouse of such former marriage is still living; [and] that the first marriage has not been dissolved by divorce or by the death of one of the parties.'"

*Id.* (quoting *In re Estate of De Force*, 119 Or 556, 249 P 632 (1926)). Such proof is necessary for a party challenging the validity of a marriage on the ground that it is bigamous to make out her "*prima facie*" case. *See Davis II*, 57 Or App at 147.

The presumption of validity is "so strong that proof of a former subsisting marriage, in order to be sufficient to overcome [the] presumption, must be so cogent and conclusive as to fairly preclude any other result." *Estate of De Force*, 119 Or at 563; *see also Smith v. Smith*, 169 Or 650, 652, 131 P2d 447 (1942) (presumption that marriage is valid "is one of the strongest disputable presumptions known in law").

In the context of probate proceedings such as this one, the "net result" of the presumption is that "the decedent's 'wife' at the time of his death is, in practical effect, his spouse for purposes of the probate code, because of the

---

[2]  Generally, a third party may not "object to, or have disallowed, a voidable marriage." *Davis I*, 55 Or App at 985. On the other hand, a "void" marriage is invalid from the outset, and it may be challenged by third parties. *Id.*

"A marriage solemnized in Oregon is clearly void if either party to the marriage had a then-living husband or wife." *Id.* (citing ORS 106.020). Tina's argument is that Grace's marriage to decedent is void, because it was bigamous, not that it was merely voidable. Thus, we understand Tina to have standing to challenge Grace's marriage to decedent.

[3]  We understand "eligible to consummate" a marriage, as the phrase is used in *In re Estate of De Force*, 119 Or 556, 249 P 632 (1926) and *Davis I*, to mean eligible to lawfully marry. *See Estate of De Force*, 119 Or at 561 (discussing marriages "consummated in accordance with the forms of the law"); *Davis I*, 55 Or App at 988 (under *De Force*, a person seeking to overcome the presumption of marital validity must prove that "the parties to the earlier marriage were eligible to contract it").

nearly insurmountable burden of proving that the last marriage is invalid." *Davis I*, 55 Or App at 988. The reason that the burden is "nearly insurmountable" is that it is a "'virtually impossible'" task to prove that "the parties to the earlier marriage were eligible to contract it," insofar as that requires proof of a negative: it "must be shown that neither [party to the earlier marriage] had ever, anywhere, been previously married but not divorced." *Id.* (quoting *Booker v. Booker*, 27 Or App 779, 787, 557 P2d 248 (1976) (Fort, J., concurring)).[4]

The presumption of marital validity furthers a policy underlying the probate code, because "providing for the distribution of property to the spouse of an intestate decedent * * * provide[s] for one who played the part of spouse in his life, in accordance with the decedent's presumed intent." *Id.* at 989. Further, as recognized in *Davis I*, there is a "crucial distinction between invalidating the marriage of a living couple and invalidating a marriage after the death of one of the parties: in the second case the parties cannot correct the deficiency." *Id.* That is, in the second case, notwithstanding the "centrality of marriage to the human condition" and the "transcendent importance of marriage," the putative spouses are rendered legal strangers—and not family—and must remain that way because any deficiency in the marriage cannot be corrected. *See Obergefell v. Hodges*, 576 US 644, 656-58, 135 S Ct 2584, 192 L Ed 2d 609 (2015) (observing that Ohio statute that did not permit plaintiff to be listed as the surviving spouse on death certificate of the decedent rendered spouses "strangers even in death").

Additionally, as explained below, one issue in this case is the preclusive effect of a dissolution judgment on those who were not parties to the dissolution proceedings. Thus, we highlight the rule that dissolution judgments, with respect to such third parties, generally do not automatically establish that the dissolved marriage was legally valid:

> "'As between strangers or between parties and strangers, a decree of divorce does not establish the previous validity

---

[4] In many cases, it is a similarly "virtually impossible" task for the party challenging a marriage to prove that a decedent did not "somewhere at some time divorce" a prior spouse before a later marriage--that also "compel[s] the party challenging the marriage] to prove a negative." *Booker*, 27 Or App at 787 (Fort, J., concurring).

of the marriage, since the res involved and adjudicated is the condition of subsequent singleness of the parties and not the valid prior existence of marital relations between them.'"

*In Re Rowe's Estate*, 172 Or 293, 302, 141 P2d 832 (1943) (quoting 2 *Freeman on Judgments* § 910).[5]

## II.   FACTUAL BACKGROUND

With that legal context in mind, we briefly set forth the pertinent undisputed historical facts (as necessary to understand the merits) as well as provide a summary of the procedural history of this case (as necessary to understand why the merits are adequately preserved for our review).

### A.   *Historical Facts*

In 1994, Michael and Yan were married, and they subsequently had a daughter, Tina, who is now an adult.[6] In January 2015, the Clackamas County Circuit Court issued a Stipulated General Judgment of Dissolution of Marriage dissolving the marriage of Michael and Yan (the 2015 Judgment). Michael and Grace then married in April 2015.

In October 2016, the Clackamas County Circuit Court issued an order (the 2016 Order) granting Yan relief from the 2015 Judgment, concluding that Michael had

---

[5]   We note that that conclusion regarding the preclusive effect of dissolution judgments is in accord with the law of other jurisdictions. *See In re Leno's Estate*, 139 Vt 554, 558, 433 A2d 260, 262 (1981), *abrogated on other grounds by Jakab v. Jakab*, 163 Vt 575, 664 A2d 261 (1995) ("As to strangers, the divorce decree does not establish the existence of a valid marriage prior to the decree."); *Rediker v. Rediker*, 35 Cal 2d 796, 801, 221 P2d 1, 4 (1950) ("As between strangers or strangers and parties, however, the decree is res judicata only in that it conclusively determines that the parties are thereafter free to remarry so far as any relation to each other is concerned.  It does not establish the previous validity of their marriage against third persons who were not and had no right to be heard thereon."); *In re Holmes' Estate*, 291 NY 261, 271, 52 NE2d 424, 429 (1943) (noting "as between strangers or between parties and strangers, a decree of divorce does not establish the previous validity of the marriage" (internal quotation marks omitted)).

[6]   Throughout this opinion, when we reference individuals being "married," or we use the terms "husband" or "wife," we use those terms to reference that the parties to the marriage have gone through the formalities of marriage and have held themselves out as spouses.  By using those terms, we are not stating a legal conclusion that the marriages were *legally* valid marriages.

The question whether Yan's marriage to Michael and whether Grace's marriage to Michael were legally valid is a point of dispute in this case.

obtained that judgment "by means of fraud and misrepresentation within the meaning of ORCP 71B(1)(c)," and it vacated the judgment.[7] After subsequent litigation, in October 2017, the Clackamas County Circuit Court entered a second Stipulated General Judgment of Dissolution of Marriage (the 2017 Judgment). The 2017 Judgment states that Michael and Yan "were married on June 1, 1994, in Guangzhou, China, and ever since that time have been husband and wife." It also orders that Michael and Yan's marriage is "dissolved effective the day of the court's execution of this Stipulated General Judgment for Dissolution of Marriage"—that is, that Michael and Yan were divorced effective October 2017.

Although Grace was present during hearings related to the 2017 Judgment, it is undisputed that Michael and Grace never sought to "remarry" following entry of the 2017 Judgment.

Michael died intestate in October 2021.

B.  *Procedural History*

After Michael's death, Grace filed a petition for administration of Michael's estate and sought to be appointed as the personal representative of that estate, because, in her view, she was Michael's surviving spouse. *See* ORS 113.035 (providing that "[a]ny interested person or the person nominated as personal representative named in the will may petition for the appointment of a personal representative"); ORS 113.085 ("[U]pon the filing of the petition under ORS 113.035, if there is no will ***, the court shall appoint a qualified person the court finds suitable as personal representative, giving preference in the following order: *** (b) If the surviving spouse of the decedent is a distributee of the estate, the surviving spouse of the decedent or the nominee of the surviving spouse of the decedent."). The trial

_____

[7] Specifically, the circuit court determined that Michael had:

"depriv[ed] Yan of an opportunity to obtain independent counsel, substantially misrepresent[ed] the value of the marital estate and the extent of the marital debt, misrepresent[ed Yan's] legal entitlement to the marital estate and to spousal support, misrepresent[ed] Tina's entitlement to Child Attending School support, misrepresented the nature of the documents he demanded [Yan] and Tina sign, and mis-dat[ed] the pleadings in order to make it appear that [Yan] had time to thoughtfully review the pleadings."

court then entered a limited judgment admitting Michael's estate for administration and appointing Grace as personal representative.

1. *Tina's objection to Grace serving as personal representative*

Tina then moved the trial court to remove Grace as personal representative pursuant to ORS 113.195(4), which provides that "the court may remove the personal representative" for "good cause." Tina argued that Grace is not an intestate heir of Michael's estate. As Tina saw it, Michael and Yan "were validly married on June 1, 1994, in Guangzhou, China"; the "actual dissolution of marriage" between Michael and Yan did not occur until October 2017; and, therefore, Michael was legally married to Yan at the time he married Grace in 2015. Tina argued that, as a result, Michael and Grace's marriage was void *ab initio* under ORS 106.020(1), which, as noted above, prohibits bigamous marriages. Tina asked the court to rule that she was the sole heir of Michael's estate.[8]

In response, Grace argued that Tina's contentions failed "because Oregon law presumes the validity of decedent's second marriage for purposes of probate administration." Grace argued that in order to successfully challenge the validity of her and Michael's marriage, under *Estate of De Force* and *Davis I*—the legal import of which we described above—Tina had the burden to prove (1) "that the parties to the alleged former marriage were eligible to consummate the same," (2) "that the spouse of such former marriage is still living," and (3) "that the first marriage has not been dissolved by divorce or by the death of one of the parties." Specifically, Grace argued that Tina did not meet her burden because, as Grace saw it, Michael and Yan divorced in 2015, so Michael was not already married when Grace married him.[9]

---

[8] Pursuant to ORS 112.025, if Grace is Michael's surviving spouse, she is entitled to half of Michael's "net intestate estate," with Tina receiving the other half under ORS 112.045. But if Tina is correct that Grace is not Michael's surviving spouse because Grace and Michael's marriage was void, then Tina is entitled to the entirety of Michael's "net intestate estate" under ORS 112.045 as his sole descendant.

[9] We note that Grace also argued that she and Michael

"lived their lives fully believing that their marriage was valid. They purchased property jointly, owned joint bank accounts, filed taxes jointly as a

In her reply brief, Tina argued that she had overcome the "presumption of the validity of decedent's second marriage," and characterized Grace as arguing that Tina failed to "meet the burden of proving that neither party was previously married and not divorced." Consequently, as required to meet her burden under *Estate of De Force* and *Davis I*, Tina argued that Yan and Michael had been validly married. Specifically, she argued that "Michael and Yan were married in 1994 in Guangzhou, China," that "to be married in China the parties must provide documentation to the Chinese government that they were not already married," and that bigamy is illegal in China.

Additionally, in seeking to meet her burden under *Estate of De Force* and *Davis I* regarding the validity of Michael and Yan's marriage, Tina argued that, in "the finding of facts in the 2017 Judgment, the Court states that 'The parties were married on June 1, 1994, in Guangzhou, China, and *** ever since that time have been husband and wife." Thus, as Tina saw it, "the Court has already ruled that the marriage between Michael and Yan was valid," because, had either party been "previously married and not divorced, then no such finding would have issued."

Further, Tina argued that because the 2015 Judgment was vacated, the parties were not legally divorced until entry of the 2017 Judgment and, therefore, Michael and Grace's marriage was void because it was bigamous.

2.  *The hearing on Tina's objection to Grace serving as personal representative and the proposed limited judgment*

During the hearing on Tina's objection to Grace serving as personal representative, Tina reiterated her position that Michael and Yan were not legally divorced until October 2017, and that, therefore, Michael's 2015 marriage

---

married couple, and presented themselves as husband and wife in every aspect of their lives for six years until Decedent's untimely death. In 2019, [Grace] became a naturalized citizen of the United States. She and Decedent underwent the naturalization process as a spouse of a U.S. Citizen. When Decedent fell ill, [Grace] cared for him until the very end. Without a doubt, Decedent and [Grace] played the part of each other's spouse during his life and Personal Representative should be provided for in accordance with Decedent's presumed intent to be married to [Grace]."

to Grace was bigamous. She further reiterated her view of the validity of Michael and Yan's marriage, highlighting China's laws against bigamy and asserting that "all formalities followed in China" when they got married.[10] Further, as evidence that Michael and Yan's marriage was valid, Tina again pointed to the statement in the 2017 Judgment that Michael and Yan were married in China in 1994.

Tina also argued during the hearing that Michael had reason in the second divorce proceeding with Yan to dispute the validity of his marriage to Yan—*viz.*, to avoid division of assets that he had hidden in the first divorce proceeding.

Thus, as Tina saw it, she rebutted the presumption of the validity of Michael's marriage to Grace. Finally, during the hearing, Tina sought to distinguish this case from *Davis*.

Grace, for her part, noted "the presumption that the second marriage is valid," and contended that Tina "has the task of proving that there was never a dissolution, * * * [and] that decedent did not somewhere at some time divorce his first wife."

The trial court ruled from the bench in favor of Tina, concluding that, "at the time of the second marriage, while technically there was a dissolution judgment in place, that judgment had been obtained by fraud" and so there was no "valid divorce decree" between Yan and Michael when Michael and Grace married. The trial court also found that Grace was fully aware that the first dissolution was set aside, that she had time to remarry Michael, but that she did not do so, and that this case was distinguishable from *Davis*, because Grace did not act in "reasonable reliance" on the 2015 Judgment after it was vacated.

After that ruling, Tina filed a proposed limited judgment which provided, among other points, that the 2015 Judgment was procured by fraud and "lacked legal effect"

---

[10]   Tina offered to provide an affidavit or testimony from Yan stating that Yan was eligible to marry Michael in 1994 and that, "to her knowledge," Michael was eligible to marry as well.  However, no such testimony or affidavit was actually provided.

and that, therefore, the 2015 marriage of Michael and Grace was void because Michael was still married to Yan when he married Grace; that Grace was, for that reason, not the surviving spouse of the Michael; and that Tina is the sole heir of Michael's estate. The proposed judgment filed by Tina also contained a provision removing Grace as personal representative.

3.  *Grace's motion for reconsideration and the trial court's subsequent order*

Before entry of the limited judgment, Grace filed an "objection and motion to reconsider" raising objections to the proposed limited judgment and seeking to have the trial court reconsider its ruling. In a subsequent memorandum, Grace argued that there was insufficient evidence that the "[d]ecedent and first wife were validly married," because the 2017 Judgment was not binding on Grace, pointing to the Supreme Court's decision regarding the preclusive effect of divorce decrees in *Rowe's Estate*, discussed above. Grace also argued, citing *Davis I* and *Estate of De Force*, that "[t]he Court and the parties must start by recognizing that the protection of a widow is a major priority in probate proceedings."

In her own memorandum, Tina argued that, as evinced by the 2017 Judgment, the 1994 marriage between Michael and Yan was "legally effective," and that that was further evinced by a marriage certificate for Michael and Yan that Tina had attached to her briefing. She also argued that *Rowe's Estate* was distinguishable.

The trial court held a hearing at which it considered at least some of the parties' arguments, but ultimately denied Grace's motion for reconsideration. During that hearing, the court made a "specific finding" that Tina had met her burden under the "*De Force* and *Davis* cases." The resulting order, in addition to denying the motion for reconsideration, specifically: (1) took judicial notice of the 2016 Order and the 2017 Judgment; (2) concluded that the "2016 Order and the 2017 Judgment were dispositive and do apply to personal representative Grace *** as to her April 10, 2015, marriage to Michael ***"; (3) determined that Tina

had "met her burden of proof regarding the validity of the underlying marriage between Michael * * * and Yan * * * and that marriage had not been dissolved by a valid court order before the April * * * 2015[] marriage between Michael * * * and Grace"; and (4) ordered that the "previously submitted limited judgment shall be entered forthwith."

The trial court then issued the aforementioned limited judgment that Tina had prepared, which removed Grace as personal representative, and determined that her marriage to Michael was void. This appeal followed.

## III.  ANALYSIS

Grace raises four assignments of error, the first three of which are relevant to our analysis. In those three assignments, we understand Grace's primary contention to be that the trial court erred in removing her as personal representative of Michael's estate, because (1) Tina did not prove that Michael and Yan had the lawful capacity to marry at the time of their 1994 marriage and (2) the 2016 Order and 2017 Judgment relied on by the trial court were not legally sufficient evidence of Yan and Michael's lawful capacity to marry.[11]

For her part, Tina contends that Grace did not preserve those two arguments as to why the trial court erred in removing Grace as personal representative. That is because, as Tina sees it, "Grace did not argue that Tina failed to prove [Michael and Yan] were validly married * * * before she brought her motion for reconsideration," and Grace "first argued that the court was prohibited from considering the [2016 Order and 2017 Judgment] in Decedent's and Yan's divorce case on reconsideration."[12]

---

[11]  As a result of our resolution of those three assignments of error, we need not address Grace's fourth assignment of error.

[12]  Tina also argues that Grace's arguments are not properly before us because Grace did not appeal the order denying reconsideration, but only appealed the later issued limited judgment. That argument is unavailing.

"[T]he right to appeal is wholly statutory." *State v. Cloutier*, 351 Or 68, 74, 261 P3d 1234 (2011). A statute provides that a limited judgment, which is the type of judgment appealed in this case, is appealable. ORS 19.205(1) ("Unless otherwise provided by law, a limited judgment * * * may be appealed as provided in this chapter."). And, when a limited judgment is appealed,

On the merits, Tina argues that Grace "judicially admitted" that Yan and Michael's "marriage was valid" in her response to Tina's objection to Grace serving as personal representative. Specifically, Tina points to a statement that Grace made in that response to Tina's objection providing that Michael was "first married [to] Yan *** on June 1, 1994." (Brackets in Tina's brief.) Tina also contends that the "best evidence of the validity of Michael's marriage to Yan *** [is] ultimately the pleadings in their divorce case," by which we understand her to reference the 2017 Judgment. Finally, we understand Tina to contend that Grace is not entitled to the presumption of validity of her marriage with Michael, because Grace was "present as an observer during the 3 days of hearings resulting in the [Clackamas County Circuit] court's finding Michael obtained" the 2015 Judgment "through fraud and misrepresentation" and thus Grace did not "reasonably rely" on that judgment.

We first consider preservation, and we conclude that Grace adequately preserved her arguments for appellate review. We then consider the merits, and we conclude that the trial court erred when it determined that Tina had met her burden of proof regarding the validity of Michael and Yan's marriage and that, therefore, it erred in removing Grace as personal representative.

A.  *Grace preserved her arguments.*

"At its heart, preservation is a doctrine rooted in practicality, not technicality." *State v. Skotland*, 372 Or 319, 326, 549 P3d 534 (2024). "[P]reservation asks whether the parties, and the trial court, had a fair opportunity to meet the merits of the argument later advanced on appeal and thereby avoid the error at the outset or to correct the error upon its occurrence." *State v. Quebrado*, 372 Or 301, 310, 549 P3d 524 (2024); *see also Skotland*, 372 Or at 326 (noting the

"the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment appealed from."  ORS 19.425.

We note that, in contrast to the limited judgment, the order denying reconsideration was not appealable.  That is because it was neither an order that "effectively determined the action so as to prevent a judgment in the action" nor "[a]n order that is made in the action after a general judgment is entered."  ORS 19.205(2), (3).  So, contrary to Tina's suggestion, Grace could not have appealed that order.

preservation doctrine serves a number of policy purposes, "but chief among them is fairness and efficiency—affording both opposing parties and trial courts a meaningful opportunity to engage an argument on its merits and avoid error at the outset").

Because preservation is a doctrine rooted in practicality, "close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Taylor*, 323 Or App 422, 426, 523 P3d 696 (2022) (internal quotation marks omitted; omission in *Taylor*). Put another way, what is "required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." *Quebrado*, 372 Or at 313 (internal quotation marks omitted).

This case arises in an odd procedural posture given the trial court's decision on Grace's motion for reconsideration. *See Karplyuk v. State of Oregon*, 334 Or App 601, 605, 556 P3d 665 (2024) (observing motions for reconsideration "can create procedural problems on appeal"). "The status of 'motions for reconsideration' is not completely clear." *R & C Ranch, LLC v. Kunde*, 177 Or App 304, 316, 33 P3d 1011 (2001), *adh'd to as modified on recons*, 180 Or App 314, 44 P3d 607 (2002). That is, at least in part, because a "motion for reconsideration" appears neither in the Oregon Rules of Civil Procedure nor in any other Oregon statute. *Caswell v. Day Law and Associates, P. C.*, 309 Or App 367, 375, 481 P3d 972 (2021).

What does appear to be evident is that, generally, if a trial court simply denies a motion for reconsideration in the exercise of its discretion, arguments raised for the first time in that motion that could have been raised earlier are not preserved for appellate review. *See R & C Ranch, LLC*, 177 Or App at 316 ("If plaintiff may appeal the denial of its motion for reconsideration on a ground that could have been raised in opposition to the original motion for partial summary judgment, then it will have circumvented the obligation to file a timely response to the original motion.").

And, here, we think it would have been well within the trial court's discretion to simply decide that it would not entertain Grace's motion for reconsideration. *See Foundation of Human Understanding v. Masters*, 313 Or App 119, 126, 496 P3d 684 (2021) (holding that "it is not an abuse of that discretion for a trial court to decline to consider evidence submitted for the first time in a motion for reconsideration when the moving party gave no indication why that evidence could not have been submitted prior to the trial court's consideration of plaintiff's motion for summary judgment" (internal quotation marks and brackets omitted)).

But that is not what happened in the trial court. Rather, the trial court considered at least some of the arguments raised on reconsideration and included in its order regarding reconsideration legal determinations that are unquestionably relevant to its later-issued limited judgment removing Grace as personal representative of Michael's estate—*viz.*, expressly determining that "2016 Order and the 2017 Judgment were dispositive and do apply to personal representative Grace," and that Tina had "met her burden of proof regarding the validity of the underlying marriage between Michael *** and Yan *** and that marriage had not been dissolved by a valid court order before the April 10, 2015, marriage between Michael *** and Grace." Then, having made those relevant determinations, it ordered that the "previously submitted limited judgment shall be entered forthwith." Further, prior to reconsideration, the trial court never took judicial notice of the 2016 Order and the 2017 Judgment—documents which we understand to form, at the very least, a large part of the basis for the trial court's conclusion that Grace's marriage to Michael was void.

We think that Grace's arguments relating to whether Tina met her burden of proof as to the validity of Yan and Michael's marriage and whether the 2016 Order and the 2017 Judgment were binding on her were adequately preserved. As described above, Grace raised Tina's obligation to prove the validity of Yan and Michael's marriage in her initial response to Tina's motion to remove Grace as personal representative. And Tina clearly understood that she had that obligation, arguing in her reply brief that Yan

and Michael had been validly married under Chinese law and pointing to the 2017 Judgment as evidence of the validity of that marriage, and again raising those arguments at the hearing on her motion to remove Grace as personal representative. Further, although Grace's argument prior to reconsideration focused on the fact that there was a 2015 divorce between Yan and Michael prior to Michael's marriage to Grace, Grace later put the validity of Michael and Yan's marriage squarely before the trial court on reconsideration and the trial court expressly ruled on that issue. Given that series of events, we think "the parties, and the trial court, had a fair opportunity to meet the merits of the argument later advanced on appeal." *Quebrado*, 372 Or at 310.

A much closer question arises as to whether Grace adequately preserved her argument as to the preclusive effect of the 2016 Order and 2017 Judgment. Her argument that those documents were not binding on her as a third party under the rule adopted in *Rowe's Estate* was not made until she filed her motion for reconsideration. Nevertheless, Tina does not contend that she was denied the opportunity to respond to that argument in the trial court—and, indeed, she did, attempting to distinguish *Rowe's Estate*. Further, in her reply, Tina argued that the 2017 Judgment was dispositive. And, importantly, after hearing the parties' arguments on the issue, the trial court expressly ruled that the 2016 Order and the 2017 Judgment did apply to Grace and that they were dispositive; we do not think that the trial court intended to make gratuitous rulings on issues central to the merits of this dispute.

Consequently, we do not think that the trial court would be surprised by our consideration of, and disagreement with it, on whether the 2016 Order and 2017 Judgment "appl[ied] to Grace" and are "dispositive." *Skotland*, 372 Or at 329 ("Sometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" (Emphasis in original.)); *see also Lang v. Rogue Valley Medical Center*, 361 Or 487, 497 n 8, 501, 395 P3d 563 (2017) (reviewing order dismissing action for abuse of discretion and considering whether "the trial court

abused its discretion in adhering on reconsideration" to that order). Nor can we say that procedural fairness to Tina requires a conclusion that Grace's argument is unpreserved. *See State v. Hitz*, 307 Or 183, 188–89, 766 P2d 373 (1988) (noting, in the context of a criminal case, that "[e]fficient procedures are instruments for, not obstacles to, deciding the merits" and issue was preserved where "[t]he state was not ambushed or misled or denied an opportunity to meet defendant's argument").

Thus, we conclude that Grace has adequately preserved the issues discussed above for appellate review.

B. *The trial court erred in removing Grace as personal representative.*

"We review the removal of a personal representative for abuse of discretion." *Maloney v. Bryant*, 332 Or App 745, 754, 552 P3d 90 (2024). "Generally stated, 'discretion' refers to the trial court's authority 'to reach a decision that falls within a permissible range of legally correct outcomes.'" *Id.* (quoting *State v. Harrell/Wilson*, 353 Or 247, 254, 297 P3d 461 (2012)). "A court abuses its discretion if it makes a decision that is 'guided by the wrong substantive standard,' or that is 'based on predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support.'" *Id.* (quoting *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-17, 376 P3d 960 (2016)).

We understand Grace to contend that the trial court abused its discretion in removing her as personal representative because it made that decision based on predicate legal conclusions that are erroneous and predicate factual determinations that lack sufficient evidentiary support. We "review the trial court's predicate legal conclusions without deference to determine whether proper principles of law were applied correctly, and its predicate factual findings—express or implicit—for any evidence in the record to support them." *Espinoza*, 359 Or at 117 (internal citation and quotation marks omitted).

Applying that standard, we conclude that the trial court erred in removing Grace as personal representative, a ruling that was based on its mistaken determination that

Grace and Michael's marriage was void because it was a big-amous marriage.

To begin, we reiterate that Tina, as the party "challenging the validity of a marriage" (*i.e.*, Michael's marriage to Grace) was required to prove that "the parties to the alleged former marriage" (*i.e.*, Michael and Yan in this case) "were eligible to consummate the same." *Davis I*, 55 Or App at 986 (internal quotation marks omitted). And she was required to do so with proof that was "so cogent and conclusive as to fairly preclude any other result." *Estate of De Force*, 119 Or at 563. That presented her with the "virtually impossible" task of proving that neither Michael nor Yan, prior to their marriage in 1994, had "ever, anywhere, been previously married but not divorced." *Davis I*, 55 Or App at 988.

We understand the trial court to have concluded that Tina met that burden based, at least in part, on the 2017 Judgment, which contained a finding that Michael and Yan were married "on June 1, 1994, in Guangzhou, China, and ever since that time have been husband and wife." But, as discussed above, as against Grace, the 2017 Judgment was not preclusive as to the validity of Michael's and Yan's marriage. *Rowe's Estate*, 172 Or at 302.

Additionally, Tina (1) notes that the 2017 Judgment was a stipulated judgment, and that Michael and Yan both stipulated therein that they were married on "June 1, 1994 \* \* \* and ever since that time have been husband and wife," and (2) asserts that Grace's statement in her brief in response to Tina's motion—*i.e.*, that Yan and Michael were married in 1994—constituted a judicial admission that Michael and Yan's marriage was valid. But neither that stipulation nor that purported judicial admission is legally sufficient to prove that the marriage of Yan and Michael was a legally *valid* marriage. *Davis II*, 57 Or App at 147-48 (concluding that "stipulation that decedent had been married previously to [a prior partner] was not a concession that [decedent and the prior partner] had entered into a valid marriage, but only that they had gone through a wedding ceremony" and that, "in cases of this type, in the absence of an express stipulation that the prior marriage was valid, we

will not extend the effect of a stipulation beyond the facts expressly stipulated").

Finally, we reject what we understand to be Tina's contention that Grace is not entitled to the presumption of the validity of her marriage to Michael because she was "present as an observer during the 3 days of hearings resulting in the [Clackamas County Circuit] court's finding [that] Michael obtained" the 2015 Judgment "through fraud and misrepresentation" and because Grace, as the trial court found, did not "reasonably rely" on that judgment.

In support of that argument, Tina notes that, in *Davis*, when discussing the policy rationale underlying the presumption of validity, we opined that, in our view, the widow in that case was "worthy of the protection of the probate laws," because the widow had, "throughout the 'marriage,' reasonably assumed that she was legally married and thus had expectations of the legal rights accorded married persons." *Davis I*, 55 Or App 989. Tina argues that Grace, unlike the widow in *Davis I*, was on notice of the potential infirmity of her marriage to the decedent. But nothing in *Davis*—nor any other opinion that Tina has pointed to—requires a widow or widower's "reasonable reliance" on a prior divorce as a predicate fact for application of the presumption of marital validity or obviates the requirement that, under that presumption, a party challenging a marriage as void after a decedent's death prove, as part of a *prima facie* case, that "that the parties to the earlier marriage had been eligible to contract it." *Davis II*, 57 Or App at 147.

For those reasons, we conclude that the trial court erred when it concluded that Grace and Michael's marriage was void and, thus, we conclude that the trial court erred when it removed Grace as personal representative of Michael's estate. As a matter of law, Tina did not adduce legally sufficient evidence to make out the *prima facie* case necessary to rebut the presumption that Grace and Michael's marriage was a legally valid marriage. We reverse and remand for further proceedings.[13]

---

[13] We emphasize that the result we reach in this case is a product of the "nearly nsurmountable burden" that Tina faced in challenging the validity of Michael and Grace's marriage on the grounds of bigamy. *Davis I*, 55 Or App at

Reversed and remanded.

---

988.  As indicated above, for Tina to prove that Michael and Grace's marriage was void on the grounds of bigamy, Tina had to prove that Michael and Yan's marriage was not a bigamous marriage.  *See id.*

That is not to suggest that the marriage between Michael and Yan *was* a bigamous marriage, or that it was, in some other way, not a legally valid marriage. A party seeking a judgment that Michael and Yan's marriage was void on the grounds of bigamy would face the same "nearly insurmountable burden" that Tina faces in this case.